United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-40863

ERIKA FLORES,

Plaintiff - Appellee,

v.

CITY OF PALACIOS, Et Al.,

Defendants,

WILBERT KALINA,
also known as BILLY KALINA,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, Chief Judge, and BENAVIDES and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

Officer Wilbert Kalina appeals the district court's denial of his motion for summary

judgment. On the evening of July 16, 2002, Kalina sought to detain Erika Flores because she was

parked on the wrong side of the road and because, when he shined a spotlight on her car, several

people fled from the vicinity. Flores did not respond to Kalina's repeated commands that she stop

and instead drove away. Kalina shot her car to prevent her escape. When Flores stopped, Kalina

1

arrested her for evading detention.

Flores sued Kalina and the City of Palacios pursuant to 42 U.S.C. § 1983. She claimed Kalina subjected her to an excessive use of force, unlawful arrest, and malicious prosecution in violation of the Fourth Amendment. Flores also claimed that Kalina's conduct violated the Fourteenth Amendment by depriving her of her good name, reputation, and personal property without due process of law.

The district court found there were genuine issues of material fact as to each of the Fourth Amendment claims and therefore denied Kalina's motion for summary judgment on those claims. *Flores v. City of Palacios*, 270 F. Supp. 2d 865, 872-73 (S.D. Tex. 2003). The district court dismissed the Fourteenth Amendment substantive due process claims because it found those claims were properly brought under the Fourth Amendment. *Id.* at 873. Kalina timely appealed the partial denial of summary judgment on the Fourth Amendment claims.

We hold that the district court properly denied summary judgment on the excessive force claim. The district court erred, however, in denying summary judgment on the unlawful arrest and malicious prosecution claims. We therefore affirm in part, and reverse and render in part.

## I.  JURISDICTION AND STANDARD OF REVIEW

The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

2

When a defendant appeals a denial of summary judgment based on qualified immunity, we "have interlocutory jurisdiction to determine whether [the plaintiff's] summary judgment facts state a claim under clearly established law." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996).

We review *de novo* the scope of clearly established law and the objective reasonableness of the defendant government official's actions. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001). Because our jurisdiction is limited to a review of questions of law, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). We may review the district court's conclusion that issues of fact are material, but not the conclusion that those issues of fact are genuine. *Reyes v. City of Richmond, Tex.*, 287 F.3d 346, 350-51 (5th Cir. 2002).

## II. FACTS ON APPEAL

When a district court fails to set out the factual disputes it deems genuine, "we may be required to review the record in order to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed."[1] *Kinney*, 367 F.3d at 348 (internal quotation marks omitted).

In this case, the district court generally identified the relevant factual disputes, but the parties identified further factual disputes. We therefore accept without review those facts identified by the district court and determine which other facts the district court likely assumed.

---

[1] We may also remand to the trial court to clarify the order, *Thompson*, 245 F.3d at 456, but we decline to do so in this case because the district court laid out almost all of the genuine issues of material fact.

3

*Id.* at 348 n.12. We begin by identifying those facts we must accept for purposes of this appeal. We consider first the undisputed facts, next the facts alleged by Flores, and last the facts alleged by Kalina.

The district court laid out the following undisputed facts: Kalina's shot entered Flores's bumper just above the tailpipe and continued through the bumper and the muffler. The bullet ultimately became lodged in the back of the muffler. Flores suffered no immediate physical injury when her car was shot, though her car was damaged. Flores, who was sixteen years old at the time, violated an 11:00 p.m. weeknight curfew for minors. Later investigation revealed alcohol in the area surrounding where she had parked her car, though there is no evidence to suggest that she had been drinking. Kalina charged Flores with evading detention in a motor vehicle, but the charge was later dismissed.

We assume that the district court most likely accepted all of the facts alleged by Flores as sufficiently supported for summary judgment purposes. Flores's factual allegations, which we assume the district court accepted, are as follows: On the evening of July 16, 2002, she visited her cousin and some friends at her aunt's house. At approximately 11:00 p.m., she got into her car, which was parked on the edge of her aunt's property just next to the driveway. She noticed a police car drive past her, but she did not see any officers exit the car or hear an officer say anything. As she pulled away from the house and onto the road, she heard a loud bang and felt something hit her car. She immediately stopped and got out of the car to investigate the noise. Kalina ran up to her and exclaimed, "I almost killed you!" He then forced her to the ground, handcuffed her, and told her she was under arrest. As a result of this incident, Flores suffers from post-traumatic stress disorder, mental anguish, headaches, and nightmares.

4

Absent any language specifically suggesting otherwise, we do not assume that the district court accepted any facts alleged by Kalina. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.") (internal quotation marks omitted). The only facts adopted by the district court in support of Kalina's claim of qualified immunity are included in its analysis of Flores's false arrest claim:

> Kalina alleges that he shined a spotlight on Flores's car; that people began to flee from the area around the car; that he called, "Police. Stop," but a person running toward the car did not stop; and that as he ran up behind the car, still calling out, "Police. Stop," Flores drove away. Flores does not directly contest these allegations: she admits seeing the patrol car drive past her, having her music too loud for her to have heard Officer Kalina shout, "Police. Stop," and beginning to drive away. Under this factual scenario, a reasonable officer in Kalina's position could have believed he had probable cause to arrest Flores.

*Flores*, 270 F. Supp. 2d at 871 (internal citations omitted).[2]

We assume the district court accepted all the facts mentioned above for purposes of this summary judgment motion.

### III.  QUALIFIED IMMUNITY STANDARD

In reviewing a government official's motion for summary judgment based on qualified immunity, we undertake a two-step analysis. First, we assess whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If we find a violation is properly alleged, we proceed to the second step, in which we determine whether the defendant's actions violated "clearly established statutory or constitutional rights of

---

[2] The district court elsewhere noted that "[i]t is unclear whether Kalina is claiming that the person who ran past him got into the car." *Flores*, 270 F. Supp. at 869 n.2.

5

which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

(quoting *Harlow*, 457 U.S. at 818).[3]

## IV.  EXCESSIVE FORCE CLAIM

Kalina argues that he is entitled to qualified immunity on the excessive force claim because Flores did not satisfy the elements of the claim and because his actions were objectively reasonable in light of clearly established law.  The district court denied Kalina's motion for summary judgment on Flores's excessive force claim because it found a genuine issue of material fact regarding the objective reasonableness of Kalina's use of deadly force.

### A.  STEP ONE: CONSTITUTIONAL VIOLATION

To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989).  Next she must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).  We hold that Flores satisfactorily alleged each element of a Fourth Amendment excessive force claim.

### 1.  SEIZURE

Kalina argues that the Fourth Amendment does not apply to Flores's excessive force claim

---

[3] This two-tiered analysis can lead to a "somewhat schizophrenic approach," because we must apply current law to the first step and the law at the time of the incident to the second step, which may sometimes result in applying different tests to the two steps.  *Petta v. Rivera*, 143 F.3d 895, 900 & n.4 (5th Cir. 1998).  Despite the confusion this approach creates, the Supreme Court has made clear that we are obliged to go through the first step of the analysis even if the second step shows that the law was not clearly established.  *Saucier*, 533 U.S. at 200-01.

6

because he had not yet seized Flores when he shot her car.[4] Thus, he argues, the allegedly excessive force was applied *before* the seizure. *See California v. Hodari D.*, 499 U.S. 621, 629 (1991) (holding that the Fourth Amendment is not triggered until the moment a person is actually seized). We disagree.

An officer seizes a person when he, "by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) (emphasis added). In addition, the "governmental termination of freedom of movement" must be made *"through means intentionally applied."* *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original). Kalina argues that Flores was not seized by the gunshot because she was not aware of its existence and so did not submit to a show of authority when she stopped. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (holding that when a person has been restrained through a show of authority, that person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave") (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). We hold, however, that Kalina seized Flores by physical force. Kalina used physical force by shooting Flores's car, and the termination of her freedom of movement was accomplished by exactly the means he intentionally applied, i.e., the shot to her car. We do not consider the suspect's perception of her detention when it is accomplished by means of physical force. *Cf. Tennessee v.*

---

[4] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Flores also argues that the damage to her car implicates an invasion of Fourth Amendment substantive due process rights, but she cites no case law to support such a claim, and the district court did not address it. We therefore do not consider her substantive due process claim. *See Glenn v. City of Tyler*, 242 F.3d 307, 315 (5th Cir. 2001).

7

*Garner*, 471 U.S. 1, 7 (1985) (considering only reasonableness of seizure accomplished by deadly force, not suspect's reaction to it).

Kalina argues that this was not a seizure by means of physical force because merely shooting at and hitting a car does not necessarily constitute a seizure. *See, e.g., Latta v. Keryte*, 118 F.3d 693, 699-700 (10th Cir. 1997); *Cole v. Bone*, 993 F.2d 1328, 1332-33 (8th Cir. 1993). While the Tenth and Eighth Circuits in *Latta* and *Cole* held that shooting at and hitting a car is not *necessarily* a seizure, the suspects in those cases were not seized because they continued to drive after being hit. These holdings therefore do not suggest that shooting at and hitting a car is not a seizure when it is successful. *Cf. Cole*, 993 F.2d at 1333 (holding that driver of truck *was* eventually seized when one of the shots aimed at the engine instead hit him in the forehead).

The Supreme Court's holding in *Brower* supports our holding. The Court held that a suspect was seized when he crashed into a roadblock erected by the police. *Brower*, 489 U.S. at 598. The Court specifically distinguished the roadblock from a police car flashing its lights because "a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." *Id.* A roadblock, therefore, can be either a show of authority or a means of physical force, depending on whether a suspect stops before reaching it or crashes into it. In determining whether there was a seizure, however, the Court did not dwell on this distinction. The Court focused on whether the suspect was seized by means intentionally applied, not on whether the suspect stopped for the reason the officers desired: "It may well be that respondents here preferred, and indeed earnestly hoped, that [the suspect] would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent." *Id.* Kalina probably expected

8

Flores to realize that he had shot her car, but we will not inquire into his subjective intent.

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* at 598-99. Similarly, we will not "draw too fine a line" in determining whether an officer seizes a suspect when he intentionally shoots a fleeing suspect's car and the suspect stops immediately in response to the shot.

Based on the facts assumed by the district court, Flores was seized.

## 2. INJURY

Next, we reject Kalina's argument that psychological injuries alone are never sufficient to sustain a Fourth Amendment claim.[5] A plaintiff alleging an excessive force violation must show that she has suffered "at least some injury." *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). While certain injuries are so slight that they will never satisfy the injury element, *see, e.g., Glenn*, 242 F.3d at 314 (holding that "handcuffing too tightly, without more, does not amount to excessive force"), psychological injuries may sustain a Fourth Amendment claim. *See Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc). The plaintiff's physical injuries in *Dunn* were only bruises, but she suffered substantial psychological injuries. *Id.* We held that she alleged an injury sufficient to demonstrate the violation of a clearly established constitutional right. *Id.* at 402-03.

---

[5] Kalina also argues that Flores did not present sufficient summary judgment evidence to support her claim of psychological injury. We lack jurisdiction to consider this argument. *See Kinney*, 367 F.3d at 348.

9

Kalina argues alternatively that even if substantial psychological injuries may be sufficient to state a claim in certain circumstances, Flores's alleged psychological injuries do not state a claim when balanced against the need for force and the use of force. We address this question as part of our objective reasonableness analysis. *See infra*, Part III(A)(4).

### 3. RESULTING DIRECTLY AND ONLY FROM EXCESSIVE FORCE

Kalina argues that any injury Flores suffered did not result directly and only from the gunshot because she only received any psychological injury when he told her he had shot her car, not when he actually shot it, as she was unaware at that time what was happening. Kalina relies on, but fundamentally misconstrues, *Hodari D.*, in which the Supreme Court precisely defined the moment of seizure to find that a fleeing suspect had not yet been seized when he discarded evidence. 499 U.S. at 625. *Hodari D.* does not suggest that cognizable injuries must be incurred at the moment of seizure or at the exact moment excessive force is applied. Were we to accept Kalina's position, any injury resulting from the use of excessive force subsequent to the initial moment of seizure would not be covered by the Fourth Amendment. Clearly this is not so. *See, e.g.*, *Graham*, 490 U.S. at 396 n.10 (suggesting that the Fourth Amendment continues to provide protection at least until the point of pretrial detention); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (holding that plaintiff alleged a valid Fourth Amendment claim for an injury received after he was seized and after his car and person had already been searched). The district court did not err in determining that Flores's injuries resulted directly and only from her seizure.

### 4. OBJECTIVE REASONABLENESS

To determine whether a seizure was objectively reasonable, and thus whether an injury is cognizable, we ask "whether the totality of the circumstances justified [that] particular sort of

10

search or seizure." *Garner*, 471 U.S. at 8-9.[6] "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). To "gaug[e] the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force." *Ikerd*, 101 F.3d at 434 (citing *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)). This balancing test "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

When an officer uses deadly force, our "objective reasonableness" balancing test is constrained. It is objectively unreasonable to use deadly force "unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3. The district court denied summary judgment because it found that Kalina used deadly force and that there was a genuine question of material fact as to whether Kalina reasonably believed that Flores posed a significant threat to anyone. Kalina argues that both conclusions are incorrect as a matter of law. The district court properly denied summary judgment because neither conclusion can be

---

[6] Whether an injury is cognizable and whether the use of force is objectively reasonable are inextricably linked questions. "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted). The definition of a cognizable injury, therefore, changes with the facts of each case. *See, e.g., Williams*, 180 F.3d at 704 (holding that choking the plaintiff was a cognizable injury when it served no legitimate purpose but that it was not a cognizable injury when it was incident to a search of the plaintiff's mouth for drugs). If the force used is constitutionally permissible, i.e., objectively reasonable, the plaintiff has not, by definition, suffered a cognizable injury and her injury is by definition *de minimis*. *Ikerd*, 101 F.3d at 434; *see also Williams*, 180 F.3d at 704.

11

resolved as a matter of law; genuine issues of material fact exist as to each.

First, whether a particular use of force is "deadly force" is a question of fact, not one of law. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (holding that "deadly force" is force "carrying with it a substantial risk of causing death or serious bodily harm"); *Omdahl v. Lindholm*, 170 F.3d 730, 733 (7th Cir. 1999) (holding that whether shooting an individual with bean bags constitutes deadly force is a question of fact that an appeals court may not review). We lack jurisdiction to review the district court's factual finding that Kalina used deadly force.

Second, Kalina argues that we must accept, as a matter of law, that he reasonably believed that Flores posed a significant threat to him or another person. He asserts that he thought he was in real danger, and he argues that his belief was reasonable as a matter of law (though not necessarily accurate) based on the facts assumed by the district court. Our perspective on review is that of "a reasonable officer on the scene," and we "allow[] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The district court found that Kalina had reason to suspect only that Flores was guilty of a minor parking violation. While the court found that Flores pulled into the street at an angle to enter the correct lane of traffic, it nonetheless concluded that she did not drive erratically. Finally, and most critically, it found that Kalina was already behind her car when he shot it. On these assumed facts we cannot find as a matter of law that Kalina reasonably believed Flores posed any danger either to him or to anyone else.

The district court correctly held that genuine issues of fact exist as to whether Kalina used

12

deadly force and as to whether he reasonably believed Flores was a threat, and Flores has sufficiently alleged a constitutional violation.

## B. STEP TWO: OBJECTIVE REASONABLENESS IN LIGHT OF CLEARLY ESTABLISHED LAW

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney*, 367 F.3d at 350 (quoting *Hope*, 536 U.S. at 740) (internal quotation marks omitted). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. *See Anderson*, 483 U.S. at 641.

Kalina argues that even if his actions violated Flores's Fourth Amendment rights, the following legal principles were not clearly established in 2002: (1) that a suspect is seized when her car is shot and she stops without realizing what has happened; (2) that excessive force that does not result in physical harm violates the Fourth Amendment; (3) that shooting at the tires of a moving vehicle is deadly force; and (4) that shooting at the tires of a moving vehicle in circumstances such as these constitutes an objectively unreasonable use of excessive force in violation of the Fourth Amendment. We find that the law was clearly established as to the first and second issues. We cannot resolve the third and fourth issues without reference to disputed questions of material fact, so we affirm the district court's denial of Kalina's summary judgment

13

motion as to the excessive force claim.

## 1. SEIZURE

It was clearly established at the time that shooting toward a person is a use of physical force. *See Garner*, 471 U.S. at 7. It was also clearly established that a use of physical force that succeeds in stopping a fleeing suspect constitutes a seizure. *See Hodari D.*, 499 U.S. at 629; *Terry*, 392 U.S. at 19 n.16. It was clearly established that stopping a moving car by intentionally shooting it constitutes a seizure.

## 2. INJURY

It was clearly established at the time, based on three cases, that psychological injuries can be sufficient to state a Fourth Amendment excessive force claim.[7]

First, we rejected our previous "significant injury" requirement for Fourth Amendment claims and held that a plaintiff need only allege "an injury" to state a claim under the Fourth Amendment. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994) (overruling the Fourth Amendment significant injury requirement in light of *Hudson v. McMillan*, 503 U.S. 1, 10 (1992). This reduction established the elimination of a need for a physical injury because it greatly widened the scope of redressable injuries.

Second, we further strengthened this holding in *Dunn*, where the plaintiff alleged purely psychological injuries, and we noted that "whatever injury requirement (if any) may remain after *Hudson* [and *Harper*] respecting a claim for excessive force in an arrest is satisfied here." *Dunn*, 79 F.3d at 402-03. The observation that substantial psychological injuries now satisfy the injury

---

[7] The extent of an injury is an element of an excessive force claim that must be clearly established in the second prong of the qualified immunity analysis. *Dunn*, 79 F.3d at 403.

element makes it entirely clear that no physical injury is necessary to state a Fourth Amendment claim.

Third, in *Petta,* we squarely held that two children who had suffered "purely psychological harm," under circumstances similar to those here, had asserted a valid § 1983 claim for excessive force under the Fourteenth Amendment. 143 F.3d at 899, 900.[8] The holding in *Petta* is applicable to our Fourth Amendment cases, despite the fact that the Petta children were not seized, because we found that during "an *attempted* but ultimately unsuccessful arrest," *id.* at 911 (emphasis in original), whether an officer's "use of force was 'objectively reasonable' largely implicates Fourth Amendment concerns, even though the fortuity of his bullet going astray removed this case from the purview of 'seizure' cases," *id.* at 913-14. We therefore applied our Fourth Amendment holding in *Dunn* to our reasoning in *Petta*. *Id.* at 914. We emphasized that "cases arising under one amendment have consistently affected the parameters of rights that, while arising under different constitutional amendments, implicate similar policy concerns." *Id.* at 914 n.31. Just as our holding in *Dunn* established clear parameters for cases brought under the Fourteenth Amendment, *see id.* at 911, our holding in *Petta* likewise establishes clear guidelines for conduct within the bounds of the Fourth Amendment.

Our holdings in *Harper*, *Dunn*, and *Petta* clearly established by 2002 that psychological

---

[8] Kalina notes that after *Dunn* and before *Petta*, we stated that "[t]here is no constitutional right to be free from emotional distress." *Shinn v. College Station Ind. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996). As noted in the concurring opinion to *Shinn*, the only way to interpret this language is that the Constitution does not provide an *independent* right to be free from emotional distress, not that it is impossible to recover for emotional distress when a plaintiff can show the violation of a right that *is* guaranteed in the Constitution. *See id.* at 787 (Dennis, J., concurring) (citing cases in which damages have been granted for emotional distress in § 1983 constitutional suits, *e.g., Memphis Comm'y Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)).

injuries are sufficient to satisfy the injury element of a § 1983 claim for excessive force under the Fourth Amendment.

### 3. DEADLY FORCE

Kalina next argues that a reasonable police officer would not have been on notice in 2002 that firing a single gunshot at a suspect's car would constitute a use of deadly force. Kalina was on notice, however, that using force "carrying with it a substantial risk of causing death or serious bodily harm" is "deadly force." *See Gutierrez*, 139 F.3d at 446. He was also on notice that deadly force would only be justified by a reasonable belief that he or the public was in imminent danger. *See Garner*, 471 U.S. at 3. The only thing he did not know for sure was whether shooting at Flores's car in the way that he did carried with it a substantial risk of death or serious bodily harm.

The flaw in Kalina's argument is that this last question is one of fact, not one of law. The district court found that he used deadly force, thereby assuming, as a factual matter, that Kalina created a substantial risk of death or serious bodily harm when he shot Flores's car. On an interlocutory appeal of this nature, we cannot review whether that factual question is genuine, and it is obviously material. *Reyes*, 287 F.3d at 350-51; *see also Omdahl*, 170 F.3d at 733 (declining to resolve the second step of a qualified immunity defense because it depended on resolution of factual dispute whether shooting bean bags at the plaintiff constituted deadly force). We therefore accept the district court's factual assumption for summary judgment that Kalina reasonably should have known that his action caused a substantial risk of death or serious bodily harm.

### 4. OBJECTIVE REASONABLENESS

As discussed in the first step of the qualified immunity analysis, whether Kalina's action

16

was objectively reasonable depends on whether he reasonably believed that Flores posed a threat of imminent danger. This is a question of fact that we may not review on interlocutory appeal. *See* Section IV(A)(4), *supra; Cowan v. Breen*, 352 F.3d 756, 762-63 (2d Cir. 2003).

The parties may revisit the questions of objective reasonableness and sovereign immunity at the close of the trial. *See Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998).

## V.  UNLAWFUL ARREST CLAIM

We conduct the same two-step qualified immunity analysis for Flores's unlawful arrest claim that we used for his excessive force claim. *See Saucier*, 533 U.S. at 200. We reverse the district court's denial of Kalina's motion for summary judgment because we find that Flores did not allege a constitutional violation. There are two issues in dispute: first, whether Kalina had probable cause to arrest Flores for evading detention, and second, whether Kalina's use of excessive force made the arrest unlawful.

## A.  PROBABLE CAUSE

An arrest is unlawful unless it is supported by probable cause. *Hinshaw v. Doffer*, 785 F.2d 1260, 1266 (5th Cir. 1986). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (emphasis added). Kalina argues that he had probable cause to arrest Flores for three crimes: (1) violating the juvenile curfew ordinance, (2) underage drinking, and (3) evading detention. We find that Kalina lacked probable cause to arrest Flores for the first two crimes but that he had probable cause to arrest her for the third.

17

Kalina did not discover Flores's age or the presence of alcoholic beverages until after the arrest. He therefore did not have probable cause to arrest her for either a curfew violation or underage drinking at the relevant time. *See id.*

The district court found that a reasonable person could conclude that Flores attempted to evade detention based upon her failure to heed Officers Kalina's repeated orders to stop. On an interlocutory appeal, we accept the district court's factual assumption that Kalina did indeed twice shout "Police! Stop!" and that Flores continued to drive away after he did so. In Texas, "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a) (Vernon 2003). Based on the facts assumed by the district court, we agree that Kalina had probable cause to arrest Flores for evading detention.

Flores argues, however, that her arrest for evading detention was unconstitutional because Kalina did not have reasonable suspicion sufficient to detain her in the first place. A suspect's flight from a police officer generates probable cause to arrest the suspect under section 38.04 only if the officer "could have reasonably believed that [his] detention of [the suspect] was lawful." *Goodson*, 202 F.3d at 740. Flores's car was parked on the wrong side of a two-way street, which is a violation of Texas law. *See* Tex. Transp. Code Ann. § 545.303(a) (Vernon 1999). Kalina therefore had authority to detain her.[9] *Cf. Whren v. United States*, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Whether he was actually motivated to detain her

---

[9] Kalina also argues he had reasonable suspicion to believe that criminal activity was afoot because people fled from the area when he shined a spotlight on Flores's car. We do not address this argument, as we find that he could reasonably detain Flores based on the parking violation.

18

for other reasons is irrelevant. *See id.* at 813.

Kalina reasonably sought to detain Flores, and he reasonably believed that, under the assumed facts, she sought to evade detention. He therefore had probable cause to arrest her.

## B.  EXTRAORDINARY MANNER OF ARREST

We find that Flores's claim of unlawful arrest based on the "extraordinary manner" of the arrest is just her excessive force claim restated, and we therefore reject it. In general, we consider claims of unlawful arrest separately from those of excessive use of force, and we analyze the former based on the probable cause standard without reference to the manner in which the arrest was accomplished. *See, e.g., Hinshaw*, 785 F.2d at 1266-67. Flores argues, however, that her arrest was unlawful because it was conducted "in an extraordinary manner." The district court agreed; it found that the constitutionality of an arrest "depends not only 'on when a seizure is made, *but also [on] how it is carried out*.'" *Flores*, 270 F. Supp. 2d at 871 (citing *Garner*, 471 U.S. at 8) (alteration and emphasis in district court opinion). *Garner*, however, establishes only that the Fourth Amendment encompasses the right to be free from excessive force *in addition to* the right to be free from an arrest made unlawful by the absence of probable cause. *See Garner*, 471 U.S. at 8. *Garner* does not support the district court's holding that the use of excessive force creates two causes of action: one for excessive use of force and one for unlawful arrest.

The only possible support for Flores's unlawful arrest claim lies in our recognition of a claim of "unreasonable seizure" in *Glenn*, 242 F.3d at 313, but it is insufficient. In *Glenn*, the plaintiff's unreasonable seizure claim was based on the manner of her arrest – she was left in an unventilated vehicle in the "baking sun" for almost an hour. *Id.* at 311. The claim in *Glenn* was therefore distinguishable from a traditional excessive use of force claim because the plaintiff's

injuries did not result from an actual use of force. In contrast to the situation in *Glenn*, Flores's allegations in support of her unlawful arrest claim are identical to those in support of her excessive use of force claim. As a result, Flores cannot raise a claim for unlawful arrest.

Flores did not allege a constitutional violation for unlawful arrest, and the district court erred in not granting summary judgment to Kalina on this claim.

## VI. MALICIOUS PROSECUTION CLAIM

The district court denied summary judgment on Flores's claim of malicious prosecution because, according to our case law at that time, "in the event the elements of malicious prosecution are proved, *a fortiori*, a violation of the Fourth Amendment is also proved." *Castellano v. Fragozo*, 311 F.3d 689, 701 (2002), *rev'd en banc*, 352 F.3d 939 (5th Cir. 2003). In our en banc opinion, issued after the district court order, we clarified that "'malicious prosecution' standing alone is no violation of the United States Constitution." 352 F.3d at 942. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, Kalina is entitled to summary judgment on Flores's malicious prosecution claim.

## VII. CONCLUSION

We hold that Kalina is not protected by qualified immunity as to Flores's Fourth Amendment excessive force claim. We therefore AFFIRM the district court's denial of Kalina's motion for summary judgment as to Flores's excessive force claim. We hold that Flores did not allege facts sufficient to support an unlawful arrest violation or a malicious prosecution violation under the Fourth Amendment. We REVERSE the district court's denial of Kalina's motion for summary judgment as to Flores's unlawful arrest and malicious prosecution claims, and we

20

RENDER partial summary judgment in favor of Kalina as to the unlawful arrest and malicious prosecution claims.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.