United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20764

STENNIE MEADOURS, Individually and as Personal
Representative of the Estate of Robert Meadours; BRUCE
MEADOURS, Individually and as Personal Representative
of the Estate of Robert Meadours; and KATIE RATERINK,

Plaintiffs-Appellees,

versus

STEVEN R. ERMEL, et al,

Defendants,

STEVEN R. ERMEL; JEFFREY DALTON; JEFFREY N. KOMINEK;
STEVEN M. MARTIN,

Defendants-Appellants.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

The Defendants-Appellants, four City of La Porte,

Texas police officers (collectively, "the officers"),

shot and killed Bob Meadours in October 2001. Meadours'

estate, his parents, and sister (collectively, "Plaintiffs" or "Appellees") brought a claim under 42 U.S.C. § 1983 asserting that the officers used excessive force. They also brought state law tort claims. The officers moved for summary judgment on the basis of qualified immunity and also official immunity under Texas law, but the district court denied the motion citing the existence of genuine issues of material fact. Because we lack jurisdiction to review the finding that genuine factual issues exist, and we agree with the district court that the factual disputes are material, we affirm.

## I. BACKGROUND AND FACTS

On the evening of October 29, 2001, Meadours' sister, Katie Raterink, contacted 911 to request mental health assistance for Meadours. Meadours' mental state had steadily deteriorated following the September 11, 2001 attacks, and for the week prior to the call he was having what Raterink described as a "mental episode." During that episode Meadours was paranoid and delusional and thought his neighbors were "out to get him." In the days and hours leading up to Raterink's 911 call, Meadours'

behavior had become increasingly bizarre, and Meadours believed that if his feet touched the ground while the sun was out, he would die.

In her call Raterink made it clear she was seeking mental health assistance for her brother and not reporting a crime. However, Raterink did inform the dispatcher that Meadours had "flipped out" and she did not know what he was going to do.

City of La Porte police officers Dalton and Martin, along with one EMS unit, were dispatched. Officer Kominek and Sergeant Ermel also responded. The officers and the EMS unit contacted Raterink at the edge of Meadours' neighborhood and talked with her for seven to eight minutes. During that conversation Raterink informed the officers about some of Meadours' paranoid and delusional behavior and she requested that he be taken for treatment. She also warned the officers that Meadours was a large and strong man (he was 6 feet 2 inches and weighed 203 pounds), that he possessed a number of tools that could be used as weapons, and that Meadours feared

3

the possibility of being involuntarily hospitalized.[1] In her deposition Raterink stated that she informed the officers of Meadours' size only so they would not be surprised by his large frame and hurt him.

After the officers spoke with Raterink, they decided to contact Meadours and secure the scene prior to the EMS approaching him. As the officers neared the house, the interior and exterior house lights turned off, making the area very dark. Two officers--Dalton and Martin-- approached the front door while Officer Kominek walked around the side of the  house to the backyard.

As Officer Kominek entered the backyard he observed Meadours sitting in a swing wearing between four and six baseball caps and a tool belt with a stuffed animal attached to it. Kominek claims he stated "Hello, Bob, Police Department." Shortly thereafter, Meadours stood up and Kominek stated he could see that Meadours was holding a large screwdriver, later identified as being 10 3/4

---

[1]In 1988 Meadours spent time in a secure mental hospital in Lafayette, Louisiana. According to Raterink, Meadours did not like being held in the hospital and involuntarily medicated. This prior experience, coupled with his paranoia, apparently made Meadours extremely reluctant to seek help for his problems.

inches long. At this point Officers Martin and Dalton joined Kominek in the backyard. The officers claim they repeatedly commanded Meadours to drop the screwdriver. Meadours refused and Officer Martin radioed Sergeant Ermel (who was still in front of the house) to join them and bring a beanbag shotgun.

Ermel entered the backyard and observed Meadours with the screwdriver. The officers claim Meadours' behavior became increasingly aggressive and he began kicking something attached to the ground. The officers have since stated that based on Meadours' behavior, they felt that Meadours was a threat to himself and others, and that the officers could not simply leave or allow Meadours to leave. After Meadours again refused to drop his weapon, Ermel claims he instructed two officers to prepare to subdue Meadours and one officer to cover him as he fired the beanbag shotgun. Ermel then fired one beanbag round that struck Meadours in the upper thigh area.

In response, Meadours ran and jumped over a fence into a dog pen and climbed atop a doghouse, retaining possession of the screwdriver. Officers Dalton, Martin,

and Kominek followed Meadours into the pen. The officers again ordered Meadours to drop his weapon, and he again refused. Ermel shot Meadours with a second beanbag round, but Meadours remained atop the doghouse with the screwdriver.

Ermel fired a third beanbag round that the officers claim knocked Meadours off the doghouse. On this point there is significant disagreement, as the Plaintiffs claim that it was bullet, not a beanbag round, that knocked Meadours from the doghouse.[2] After falling/jumping from the doghouse, Meadours began to run toward a door leading to the garage with the screwdriver held in what the officers describe as a "stabbing grip." According to the officers, Kominek was standing near that door and they felt that Meadours was charging at Kominek with the screwdriver. Responding to the perceived threat, officers Dalton, Kominek, and Martin stated they repeatedly fired their service weapons, each a different caliber, killing Meadours. A total of twenty-three shots were fired, with

---

[2]The Plaintiffs presented expert testimony that a bullet entered Meadours' thigh at an upward angle, indicating that Meadours was shot while on top of the doghouse.

fourteen striking Meadours, although the shooting only lasted a few seconds.

The Plaintiffs brought a 42 U.S.C. § 1983 claim against the City of La Porte and the officers, alleging that the officers violated Meadours' constitutional rights by subjecting him to excessive force. The Plaintiffs also brought state law claims against the officers for gross negligence, assault and battery, and intentional infliction of emotional distress. Additionally, Raterink brought a claim for bystander recovery.

After extensive discovery all defendants moved for summary judgment. The district court granted the City of La Porte's motion, and it is not a party to this appeal. *See Meadours v. Ermel*, No. H-04-102, 2005 WL 1923596, at *5-*6 (S.D. Tex. Aug. 10, 2005). The court also granted the officers' motion with regard to Raterink's bystander liability claim and the Appellants have not cross-appealed that ruling. *Id.* at *10. The district court denied summary judgment on qualified immunity grounds because "there does exist a genuine issue of material

7

fact as to whether the force they utilized" was unreasonable. *Id.* at *8. Lastly, the court denied the officers' motion for summary judgment on the Plaintiffs' state law claims. *Id.* at *9-*10. The officers timely appealed.

## II. Discussion

### A. Separate Consideration of Each Officer's Actions

As a threshold matter, the officers argue that in determining the applicability of qualified immunity we should consider the conduct of each officer independently. The district court, however, analyzed the officers' actions collectively, because it found they acted in unison. *Id.* at *6. In reaching that result the district court relied on *Jacobs v. West Feliciana Sheriff's Department,* 228 F.3d 388, 395 (5th Cir. 2000). In *Jacobs*, we noted that the defendants did not act in unison, and held that, "[a]ccordingly . . . we examine each individual defendant's entitlement to qualified immunity separately." 228 F.3d at 395. Relying on this statement, the district court fashioned a rule that if defendants act in unison, their conduct should be

8

considered collectively.

The district court's finding that the officers acted in unison is a finding of fact that we cannot review at this stage. *See Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004). But even accepting that factual finding, we hold that the district court erred in considering the officers' actions collectively.

The district court's decision to consider the officers' actions collectively because it found they acted in unison extends the holding of *Jacobs* beyond what prudence and case law allows. *See Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999) (holding that each defendant's actions in a § 1983 case must be considered individually). Further, we have consistently examined the actions of defendants individually in the qualified immunity context. *See Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004) (examining the culpability of each defendant individually to determine if they deprived the plaintiff of a constitutional right); *see also Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005) (same);

9

*see also Tarver v. City of Edna*, 410 F.3d 745, 752–54 (5th Cir. 2005) (examining the conduct of two officers independently and finding that one was entitled to qualified immunity while the other was not).

Additionally, we have found no sound reason to extend *Jacobs*. The relevant part of *Jacobs* itself cites only the decision in *Stewart,* and that case makes only the blanket statement that "each defendant's subjective . . . [actions] must be examined separately" and does not contemplate an exception for defendants acting in unison. *Stewart*, 174 F.3d at 537.[3]

The district court erred in considering the officers' actions together, and we instruct the court to consider the officers actions separately on remand.[4]

B. Qualified Immunity

---

[3]Further, no interest is harmed by considering the officers' actions separately. Separate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions.

[4]Contrary to Plaintiffs' contention, this argument is not waived. The officers have consistently urged the district court to consider their claims for qualified immunity individually. The district court's opinion illustrates as much because it expressly denies the officers' request to be considered separately. *See Meadours*, 2005 WL 1923596, at *6.

The denial of a motion for summary judgment based on qualified immunity is reviewable through an interlocutory appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). However, we only have jurisdiction to review questions of law. *Id.* "[W]e are restricted to determinations of questions of law and legal issues, and we do not consider the correctness of the plaintiff's version of the facts." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005) (internal quotation marks omitted).

As a result, we cannot review the district court's determination that genuine issues of fact exist about what happened. *See Kinney v. Weaver*, 367 F.3d 337, 346-47 (5th Cir. 2004) (en banc). In other words, we may only review the district court's conclusion that issues of fact are material (a legal question), but we may not review the conclusion that those issues of fact are genuine (a fact question). *See Flores*, 381 F.3d at 394.

The district court concluded that genuine issues of material fact exist regarding the reasonableness of the force used by the officers, and we lack jurisdiction to

review whether the those issues of fact are genuine. *See id.* We may only review whether the disputed issues are material to the qualified immunity analysis. *See id.* We review this legal question de novo. *See Attebery,* 430 F.3d at 252.

The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability "'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Flores*, 381 F.3d at 393-94 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A two-step analysis applies to reviewing a motion for summary judgment based on qualified immunity. *Id*. at 395. First, we determine whether a constitutional right has been violated based on the facts Plaintiffs have alleged. *See id.; see also Sacier v. Katz*, 533 U.S. 194, 200 (2001). Second, we determine whether the officers' conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th

12

Cir. 2000).

Regarding the first prong, Plaintiffs allege that the officers violated Meadours' Fourth Amendment right to be free from excessive force. An excessive force claim requires Plaintiffs to show, *inter alia*, that use of excessive force was objectively unreasonable. *Id*. at 740. "To gaug[e] the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force. This balancing test requires careful attention to the facts . . . ." *Flores*, 381 F.3d at 399 (alteration in original) (citation and internal quotation marks omitted). In order to determine reasonableness in the case at bar, several key factual disputes must be resolved--for example, whether Meadours was first shot while charging at Officer Kominek or while he was still atop the doghouse, posing no imminent threat. Given the necessity to determine these types of facts, this dispute is material to the outcome of the case and the officers are not entitled to summary judgment. *See id*.

Likewise, under the second step, the touchstone is

13

whether the officers' actions were objectively reasonable under existing law. As mentioned above, certain factual disputes must be resolved before we can decide reasonableness here. *See id.* Thus, the factual disputes cited by the district court are material.

In sum, the district court found that issues of fact exist. The district court found that both sides presented evidence to support their version of events and thus, the issues of fact were genuine. While we lack jurisdiction to review that finding, we may review the district court's determination that the factual issues are material. The question of when and where Meadours was shot is integral to determining whether the officers' actions were reasonable, and consequently, we conclude that the dispute is material.[5] Because genuine issues of

---

[5]Of course, if we were able to conclude that the officers' actions were objectively reasonable even under existing law and the facts alleged by the Plaintiffs, the dispute would not be material and they would be entitled to qualified immunity. *See Kinney*, 367 F.3d at 357. We cannot find that here. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding that an officer cannot use deadly force unless a suspect poses an imminent threat of serious physical harm). We also note that Meadours was not a criminal suspect. Although we have not had the occasion to consider qualified immunity in the context of the police killing a mentally ill individual, we note that the Ninth Circuit has held "the governmental interest in using [deadly] force is

14

material fact exist, summary judgment is not appropriate and we remand for a trial on the merits.[6]

We express no opinion about the ultimate reasonableness of the officers' actions. It is for a jury to decide the factual disputes, and at this stage we cannot say the officers are entitled to qualified immunity. *See Kinney*, 367 F.3d at 347 n.8 (noting that because of our limited review in this context "officials may sometimes be required to proceed to trial even though the ultimate resolution of th[e] factual disputes may show that they are entitled to qualified immunity").

C. State Law Claims

The officers moved for summary judgment on

_____

diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). Further, the City of La Porte's policy for using force against a mentally ill individual states that "[i]f an officer must control and restrain a mentally ill person, he shall use the least amount of force."

[6]The officers argue that because Sergeant Ermel did not actually shoot Meadours with a bullet, he should be entitled to summary judgment on his qualified immunity defense. However, the district court found that Ermel's use of the beanbag gun constituted deadly force, and while we may doubt that conclusion, it is a finding of fact we cannot review at this stage. *See Flores*, 381 F.3d at 399. Because questions of fact exist whether deadly force was reasonable, Ermel is not entitled to summary judgment.

15

Plaintiffs' state law claims, arguing that (1) they are entitled to official immunity under Texas law; (2) the Texas Civil Practice and Remedies Code bars Plaintiffs' tort claims; and (3) Raterink could not prove her bystander claim. The district court granted the motion as to part three but denied the rest.

The "good faith" test applied by Texas law in determining official immunity is evaluated under substantially the same standard used for qualified immunity determinations in § 1983 actions. *See Mowbray v. Cameron County*, 274 F.3d 269, 280 (5th Cir. 2001); *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (equating the good faith test to a test of objective legal reasonableness). *But see Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004) (highlighting minor differences between the two standards). Any difference between the qualified immunity standard and the official immunity standard is immaterial here, and we reach the same result on this claim as we do on the § 1983 claim: the officers are not entitled to summary judgment.

16

Furthermore, we find that Texas Civil Practice and Remedies Code § 101.106(a) does not bar Plaintiffs' suit in this case.[7] That statute, barring suits against governmental employees if plaintiffs bring suit against the governmental unit, does not apply to intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (excluding from the entire chapter claims "arising out of assault, battery, false imprisonment, or any other intentional tort").

We recognize that some Texas courts have extended section 101.106 to include intentional torts, relying on the fact that the Texas Supreme Court, albeit without discussion, applied section 101.106 to an intentional tort in *Newman v. Obersteller*, 960 S.W.2d 621, 622-23 (Tex. 1997). However, *Newman* stands for the proposition that section 101.106 is an immunity statute, and not a bar. *See* 960 S.W.2d at 622-23. The Court held the "bars

---

[7]That section reads: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEXAS CIV. PRAC. & REM. CODE § 101.106(a).

any action" language of the former version of section 101.106 "is an unequivocal grant of immunity in this context." *Id.* at 622. *Newman* never explicitly held that section 101.106 should be applicable to intentional torts. In addition, *Newman* relied on the language of the prior version of section 101.106. Given the uncertainty of *Newman's* applicability here, we feel compelled to follow the plain language of section 101.057(2). Thus, section 101.106 does not apply to these intentional tort claims.

### III. Conclusion

For the foregoing reasons we affirm the district court's order denying summary judgment for the Defendants, and remand for a trial on the merits. **AFFIRMED.**