# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-50268

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2024

Lyle W. Cayce
Clerk

Jose Castro,

*Plaintiff—Appellee*,

*versus*

Kimberly Kory; Michael Thornton; Carl Kerawalla;
Shawn King,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-1022

———————————————————————

Before Jolly, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

San Antonio police officers woke delivery driver Jose Castro from a nap in his truck and arrested him at gunpoint for unspecified charges that local prosecutors ultimately refused to pursue. Castro filed a civil rights lawsuit against the officers involved, who invoked qualified immunity to dismiss Castro's claims. The district court granted qualified immunity as to

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Castro's initial unlawful seizure claim, but it denied qualified immunity as to Castro's unlawful prolonged seizure, illegal search, excessive force, and failure to intervene claims. The officers filed this interlocutory appeal hoping to avoid trial on the merits of Castro's Fourth Amendment claims. We REVERSE the denial of qualified immunity on Castro's unlawful prolonged arrest claim, AFFIRM the other denials of qualified immunity, and REMAND for further proceedings not inconsistent with this opinion.

I.

While patrolling San Antonio at about 5:00 a.m., Officer Carl Kerawalla spotted an Enterprise box truck. It was parked on private property behind a strip mall, with its driver's side door open. Jose Castro, a delivery driver, had parked the truck to take a nap while on break from delivering animal supplies to veterinary clinics. Kerawalla, a plainclothes officer in an unmarked police car, parked behind Castro's truck and ran its license plates. The vehicle was not listed as stolen. Still, Kerawalla's suspicion lingered, and he called for backup.

Uniformed officers Michael Thornton and Kimberly Kory soon arrived in police cruisers. Thornton called out to the truck requesting its occupants to exit. There was no immediate response. Thornton drew his service weapon and pointed it toward the truck's cab. Castro was startled and unsure whether these intruders were truly police officers. Castro refused to get out of the truck, but he explained to the police his delivery break and asked the officers in broken English "what kinda of police you are?" Castro was confused by the commotion and called 911 to request police intervention. He then turned on his truck's emergency flashing lights so that dispatched officers could find and assist him. Meanwhile, the officers continued to command Castro to exit his vehicle. At some point, Thornton requested that dispatch send Shawn King, an officer who speaks Spanish.

Kerawalla then approached the truck from the passenger door and pointed his AR-15 at Castro's forehead. At this point King arrived. He and Thornton approached the driver's side cab and attempted to remove Castro. Castro pulled away from the officers and flailed his arms to avoid being removed from his truck. King struck Castro in the head and leg and then subdued him by pointing his pistol at Castro's head. Once Castro was out of the truck, King twice struck Castro's left arm, Thornton executed a leg sweep, and Kerawalla helped them both take Castro to the ground to handcuff him. While Kerawalla handcuffed Castro, King and Thornton applied pain compliance techniques to Castro's back, neck, wrists, arms, knees, and shoulders. The handcuffs—which the officers left on Castro for over an hour—caused swelling, numbness, pain, and visible trauma on Castro's hands for over five hours after the incident. Kory testified that even at this point in the incident that he still did not know whether Castro was engaged in or about to engage in criminal activity. During the confrontation, no officer perceived an immediate threat to the safety of his life or saw Castro with a weapon.

While Castro was handcuffed on the ground and out of reach of the truck, Kory searched the truck's cab. Kory located manifests that corroborated Castro's story, but she did not inform the other officers. King, Kerawalla, and Thornton also searched the truck's cab and cargo hold. Thornton radioed for a K-9 unit to search Castro's truck for narcotics. No officer attempted to log or inventory the items found in Castro's truck. At some point, an officer placed Castro in the back of a police cruiser at the scene.

After half an hour of investigating, an officer called out that the scene was clear, meaning there was no evidence of illegal activity. Half an hour later, an assistant district attorney telephonically informed Thornton that the officers had lacked probable cause to search Castro and that the district

attorney would not accept charges against him.  Thornton then pulled a handcuffed Castro out of the police cruiser and verbally harassed him before releasing him.  None of the officers intervened on Castro's behalf during the incident.  Hours later, Castro sought medical care at a local hospital for pain and swelling stemming from the assault.  Castro testified that the encounter had caused him to experience mental and emotional distress, nightmares, and physical pain, which have affected his professional and personal life.

Castro sued Kory, Thornton, Kerawalla, and King for claims under the Fourth and Fourteenth Amendments, including excessive force, unreasonable seizure, unreasonable search, failure to intervene, and unreasonably prolonging the search and seizure.  Castro moved for partial summary judgment on the merits of his claims, arguing that the initial investigatory stop lacked reasonable suspicion to believe that he had committed a crime.  The officers moved for summary judgment, claiming qualified immunity.  The district court: (1) denied Castro's motion; (2) granted the officers' qualified immunity as to their initial seizure of Castro; and (3) denied the officers' qualified immunity as to the claimed prolonged arrest of Castro, the search of Castro's truck, excessive force, and the failure to intervene.  The officers now appeal the denial of qualified immunity.

## II.

It is very well established, of course, that we have interlocutory jurisdiction to review denials of qualified immunity "to the extent that it turns on an issue of law." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (internal quotation omitted).  As such, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir 2004).  In this limited inquiry, we accept the plaintiff's version of the facts as true, though

we may consider record evidence that blatantly contradicts or utterly discredits his facts. *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81). We review de novo the district court's conclusions concerning the materiality of the facts. *Kinney*, 367 F.3d at 349.

A defendant's good-faith assertion of qualified immunity shifts the ordinary summary judgment burden to the plaintiff to rebut legal immunity. *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016). To satisfy this burden, Castro must show that (1) the officers violated his constitutional rights and (2) that those rights were "clearly established" at the time of the alleged misconduct. *See Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022) (citation omitted). Under the second step, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up).

## III.

On appeal, the officers challenge the district court's denial of qualified immunity as to Castro's claims for (1) unlawful prolonged seizure, (2) illegal search, (3) excessive force, and (4) failure to intervene. We will address each claim.

## (1)

We turn first to the district court's denial of qualified immunity regarding the prolonged arrest of Castro. As earlier stated, the officers arrested Castro after he refused to exit his vehicle and held him arrested for over an hour, including approximately 45 minutes after they had cleared the scene and concluded their evidentiary mission.

We begin with the fundamental premise that to make a lawful arrest, an officer must have probable cause to believe the suspect committed a crime. *Flores*, 381 F.3d at 402. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (internal quotation marks omitted).

Here, Castro's repeated refusals to exit his vehicle interfered with a peace officer's duty in violation of TEXAS PENAL CODE § 38.15. Failure to comply with a police officer's instructions creates probable cause for an arrest under this statute. *See Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (collecting cases where courts affirmed convictions of defendants who failed to comply with an officer's instructions).

Although Castro argues he lacked the requisite mental state to commit this offense, his blatant refusals to exit his vehicle, pulling away from the officers, and flailing his arms illustrate his culpability. *See Berrett v. State*, 152 S.W.3d 600, 603-05 (Tex. App. 2004) (affirming a defendant's conviction for public interference when the defendant repeatedly moved his arm out of the officer's reach to avoid being placed in handcuffs despite the officer's repeated commands to comply). The district court's reasonable suspicion holding involving the initial stop and seizure confirms that the officers were exercising lawful duty as required by this statute.

Because the law justified Castro's arrest, we turn our attention to the arrest's duration. The officers held Castro handcuffed for approximately 45 minutes after they had cleared the scene while they determined whether to charge him. The entire incident lasted well under two hours. Even a five-hour arrest prior to release is "an insignificant restraint on … liberty" that does not violate the Fourteenth Amendment in the case of a warrantless arrest made pursuant to probable cause that does not ultimately result in

charges being filed. *Shelton v. Rivera*, 12 F.3d 207 (5th Cir. 1993). *See also Flanagan v. Hinton*, 983 F.2d 1063 (5th Cir. 1993). Consequently, the district court incorrectly denied the officers qualified immunity on Castro's prolonged arrest claim.

(2)

We now turn to the district court's denial of qualified immunity to the officer's search of Castro's vehicle. As we have noted, the officers searched the passenger cab and cargo area of Castro's rented box truck while Castro was handcuffed and out of reach. On appeal, the officers argue that exceptions to the warrant requirement permitted the search: the search-incident-to-arrest and inventory search exceptions.

Although warrantless searches generally violate the Fourth Amendment, police may "search a vehicle incident to a recent occupant's arrest…when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 556 U.S. 332, 343 (2009). These searches, however, are limited to "the area from within which [the suspect] might gain possession of a weapon or destructible evidence." *Id.* at 339 (internal quotation marks and citation omitted). Here, Castro was restrained and out of reach of the truck. This exception is inapplicable.

The Fourth Amendment also may permit warrantless inventory searches in which automobiles are impounded and their contents are inventoried. *South Dakota v. Opperman*, 428 U.S. 364, 368-70 (1976); *see also United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994). Inventory searches do not, however, circumvent the warrant requirement if they are evidentiary in nature rather than for a caretaking function of the impounded vehicle and/or its contents. *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995) (quoting *Andrews*, 22 F.3d at

1336). Circumstances here show that this search was for evidentiary purposes rather than for inventory purposes: (1) the officers created no log or inventory of items searched or located in Castro's truck; (2) Thornton radioed for a K-9 unit to search Castro's truck for narcotics; and (3) the officers never actually impounded Castro's truck. This exception is also inapplicable.

Thus, neither of the two warrant exceptions that are suggested by the officers justify the officers' search here. *Molina*, 37 F.4th at 281. As such, the district court correctly denied the officers qualified immunity on Castro's illegal search claim.

(3)

We continue our analysis of the district court's denial of qualified immunity, turning to Castro's excessive force claim. As earlier noted, the officers pointed firearms at Castro, forcibly removed him from his vehicle, and then tackled and handcuffed him. On appeal, the officers argue that the severity of Castro's crime, the immediate threat to the safety of the officers, and Castro's resisting arrest justified their use of force.

The Fourth Amendment enshrines the right to be free from excessive force. *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008). To determine excessive force violations, courts examine the severity of the crime at issue, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "threat-of-harm factor typically predominates the analysis when deadly force has been deployed." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021).

Here, the officers had no probable cause to suspect Castro of a crime beyond his initial resistance to police commands. Nor did the officers reasonably believe Castro to be a genuine threat to their safety. Although

Castro initially pulled away from the officers and flailed his arms in defense while they removed him from his vehicle, the force used by the officers, particularly pointing a gun at his head, was clearly disproportionate to Castro's resistance, which did not endanger the police. *Petta v. Rivera*, 143 F.3d 895, 900–903 (5th Cir. 1998).

Consequently, Castro has made a showing of injuries resulting directly from excessive, unreasonable force, which if proved at trial, can qualify as a violation of his protected constitutional rights. *Strain*, 513 F.3d at 500–01. Finally, there can be no question that the right at issue here, i.e., freedom from excessive force, is clearly established. Although we have previously held in some cases that pointing a gun at a suspect does not rise to the level of a constitutional violation, this case is not the case. *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230–31 (5th Cir. 1988). Here, the officers pointed multiple guns throughout the encounter at an unarmed, confused, and only mildly disruptive suspect. To the point, the district court correctly denied the police claim of qualified immunity on Castro's excessive force claim.

(4)

Finally, we consider the district court's denial of qualified immunity on Castro's failure to intervene claim against all four officers. As earlier indicated, no officer intervened on Castro's behalf during the incident. On appeal, the officers argue that because there were no underlying constitutional violations, they had no obligation to intervene, and, thus, they are entitled to qualified immunity.

A failure to intervene claim arises when an officer, who can prevent harm caused by a fellow officer's constitutional violations, fails to act. *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). Here, given that we have already held that Castro has made a showing of constitutional violations, the predicate of the officers' defense, i.e., no underlying

No. 23-50268

constitutional violations, is without merit.  It follows that the district court correctly denied each of the officers qualified immunity to this claim.

IV.

For the foregoing reasons, the judgment of the district court is REVERSED on its denial of qualified immunity for the officers' prolonged arrest of Castro and AFFIRMED in all other respects.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.