# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2016

Lyle W. Cayce
Clerk

No. 15-30062

DARRIN HILL, individually and by and through his next friend Marie Hill; MARIE HILL,

      Plaintiffs - Appellees

v.

NEW ORLEANS CITY; RONAL SERPAS, in his official capacity as Superintendent of the New Orleans Police Department; ARNESTA TAYLOR, in his official capacity as former Superintendent of the New Orleans Police Department; CATHEY CARTER, New Orleans Police Department Detective; ALLEN GRESSERT, New Orleans Police Department Detective; ANTOINE SAACKS, JR., New Orleans Police Department Assistant Superintendent/Deputy Chief; JOSEPH HEBERT, New Orleans Police Department Officer; HOWARD LEWIS, New Orleans Police Department Officer; ROBERT HAAR, New Orleans Police Department Officer; DANIEL WAGUESPACK, New Orleans Police Department Crime Lab Criminalist,

      Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-2463

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

No. 15-30062

PER CURIAM:*

Plaintiff-Appellee Darrin Hill spent nearly twenty years in state custody for rape and kidnapping before DNA evidence conclusively proved his innocence. After his release, Hill and his mother brought the instant suit against the City of New Orleans and various current and former employees of the New Orleans Police Department, raising both federal and state claims. The Defendants-Appellants moved for summary judgment on the basis of qualified immunity, which the district court granted in part, but denied as to Hill's Fourteenth Amendment due process claim. The defendants now appeal the district court's refusal to grant summary judgment on that claim.

The district court concluded that genuine disputes of material fact exist as to whether all of the individual defendants suppressed evidence calling into question Hill's guilt and were involved in implementing unduly suggestive lineup procedures. The record evidence the district court cited in support of its conclusions, however, was largely limited to specific actions or inactions by one defendant, Detective Cathey Carter. For the reasons described below, we DISMISS this appeal as to Detective Carter but REMAND to the trial court for further consideration as to the remaining individual defendants.

## BACKGROUND

On the evening of July 1, 1992, E.V. and her boyfriend, G.T.,[1] were sitting on the bank of Lake Pontchartrain in New Orleans when they were accosted by a man we now understand to be Derrick Woodberry. At the time, Woodberry, a black male, was nearly 18 years old, 6' 1" tall, and weighed 180 pounds. Woodberry pulled out a handgun and demanded G.T.'s wallet and car

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The victims' full names have been omitted to preserve their privacy.

2

keys. When G.T. said he did not have his wallet on him, Woodberry instructed G.T. to walk into the lake and then throw over his car keys, threatening to kill E.V. if he refused. G.T. complied. Woodberry then forced E.V. at gunpoint to drive him in G.T.'s car to a dark location behind a supermarket, where he proceeded to anally rape her. Afterward, Woodberry exited G.T.'s car and left in a red or burgundy Nissan driven by an unknown accomplice[2] who had followed Woodberry and E.V. to the scene.

E.V. promptly reported the rape and Officers Harold Lewis and Robert Haar of the New Orleans Police Department ("NOPD") were first to arrive on the scene, followed shortly by Detective Cathey Carter. Det. Carter spoke with both victims, who related what had happened. Det. Carter's handwritten notes indicate that G.T. described the perpetrator as 19 to 21 years old, 6' to 6'1" tall, 180 pounds, with brown skin and a thin build, and also indicated that G.T. would be able to identify the perpetrator. Det. Carter's contemporaneous notes do not indicate whether E.V. was able to describe her attacker or whether she stated she would be able to identify him.[3] E.V. was transported to a hospital where physical evidence was collected in a rape kit.

The next day, Det. Carter learned from E.V. that, following the rape, G.T. had found an unfamiliar checkbook in his car, bearing the name "Darren Hill" and the address "4860 Camelia Street." Det. Carter was assigned as the lead investigator of the crimes against E.V. and G.T., and Det. Allen Gressert was assigned to assist her. A search for the name "Darren Hill" apparently led Det. Carter to the plaintiff, Darrin Hill.[4] At the time, Hill was 26 years old, 5'

---

[2] The identity of the accomplice has never been determined. There appears to be no evidence that Darrin Hill was the accomplice.

[3] The official police report, however, indicates that E.V. stated she would be able to identify her assailant and makes no mention of G.T. saying the same.

[4] Although the plaintiff's first name is spelled with an "i" rather than an "e," he does not contest that the checkbook was for a bank account in his name. Hill, who is mentally

## No. 15-30062

7" tall, and weighed 135 pounds. Both E.V. and G.T. were shown photographic lineups that included Hill and five fillers, although the content and circumstances of those lineups are disputed by the parties. In any event, E.V. picked out Hill from the photo array and G.T. now claims that he did as well.

Det. Carter investigated the address on the checkbook to some extent. She determined that the apartment at that address was unoccupied. According to the plaintiffs, however, the adjoining apartment of the two-unit dwelling was publicly listed at the time as being occupied by the sister of Derrick Woodberry, the actual perpetrator. There is no evidence Det. Carter learned this information. Det. Carter did order a canvas of the surrounding area, which led to a sighting of a red Nissan matching the description of the perpetrator's getaway vehicle on the night of the crime, but this lead appears not to have been pursued further.

On July 17, 1992, Det. Carter applied for and obtained a warrant to arrest Hill on charges of aggravated rape and second degree kidnapping based on E.V.'s identification. Hill turned himself in and was indicted for aggravated rape, second degree kidnapping, attempted aggravated crime against nature, and two counts of armed robbery. A later motion to suppress E.V.'s identification was denied. Due to Hill's mental illness, he was deemed incompetent to assist in his own defense and to stand trial, but remained in state custody for the next seven years. Hill unwaveringly claimed that he was innocent. On February 11, 1999, Hill was finally tried and found not guilty by reason of insanity, which in Louisiana requires a finding beyond a reasonable doubt that the defendant committed the offense charged but that he was

---

impaired, explained to an NOPD investigator that several acquaintances, including one named Derrick, had convinced him to open a checking account in his own name but for their collective use.

4

criminally insane.[5] The district court noted that such an adjudication is the "functional equivalent of a conviction." Hill remained in state custody until April 27, 2012, when the Orleans Parish Criminal District Court ordered that he be released following a test of the rape kit, which showed definitively that Derrick Woodberry had committed the rape and robbery, and that Hill was factually innocent of the crimes.

On April 25, 2013, Hill and his mother brought the instant suit pursuant to 42 U.S.C. § 1983, naming as defendants (1) the City of New Orleans; (2) NOPD Detective Cathey Carter; (3) NOPD Detective Allen Gressert; (4) NOPD Detective Joseph Hebert; (5) NOPD Officer Howard Lewis; (6) NOPD Officer Robert Haar; (7) NOPD Assistant Superintendent and Deputy Chief Antoine Saacks; (8) NOPD Superintendent Ronal Serpas; (9) former NOPD Superintendent Arnesta Taylor; (10) NOPD Crime Lab Criminalist Daniel Waguespack; and (11) John and Jane Doe NOPD officers and supervisors. Hill claimed that the Appellants violated his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, as well as Title II of the Americans with Disabilities Act. Hill also brought several Louisiana state law claims. Hill's mother alleged a deprivation of her right to familial association and loss of consortium. Hill later voluntarily dismissed his federal claims against the City. The defendants moved for summary judgment on the basis of qualified immunity, arguing that Hill's Fourth and Fourteenth Amendment claims failed because there had been probable cause to arrest him.

---

[5] The defendants place a great deal of stress on the lack of evidence in the record regarding the details of the judicial proceeding that resulted in Hill being found not guilty by reason of insanity. They argue that the record does not definitively establish whether Hill went to trial. The district court found, however, that Hill was tried. In any event, it is uncontested that Hill has consistently maintained his innocence and that he was found not guilty by reason of insanity on February 11, 1999, resulting in him spending the next thirteen years in state custody.

No. 15-30062

The district court granted summary judgment in favor of the defendants on Hill's Fourth Amendment[6] and Americans with Disabilities Act claims, as well as his mother's federal claims, but denied summary judgment on Hill's Fourteenth Amendment claim and both plaintiffs' state law claims. *Hill v. New Orleans City*, No. CIV.A. 13-2463, 2015 WL 222185, at *18 (E.D. La. Jan. 13, 2015).

Regarding Hill's Fourteenth Amendment claim, the district court held that Hill had offered sufficient evidence to create genuine disputes of material fact as to whether (1) the "[d]efendants employed an unduly suggestive lineup procedure to obtain a false identification" of Hill; (2) the defendants suppressed evidence calling into question the credibility of E.V.'s identification of Hill; (3) G.T. was shown a photographic lineup and, if so, the defendants suppressed evidence that G.T. identified someone other than Hill; (4) "Det. Carter deliberately suppressed potentially exculpatory evidence relating to the lack of connection between Darrin Hill and the address listed on the checkbook recovered from G.T.'s car"; and (5) "Det. Carter and/or other defendants deliberately suppressed" the DNA evidence that ultimately led to Hill's exoneration. *Id.* at *6-9.

The defendants filed the instant appeal, seeking interlocutory review of the district court's denial of their motion for summary judgment on Hill's Fourteenth Amendment claim.[7]

---

[6] The district court determined that Hill had presented sufficient evidence to create a triable issue on whether his arrest violated his right to be free from arrest without probable cause, but ultimately granted summary judgment because the claim was time-barred.

[7] The defendants have not appealed the district court's denial of summary judgment on Darrin and Marie Hill's state law claims, and Darrin and Marie Hill have not cross-appealed the claims on which the district court granted summary judgment.

No. 15-30062

## JURISDICTION AND STANDARD OF REVIEW

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." *Lytle v. Bexar Cty.*, 560 F.3d 404, 408 (5th Cir. 2009) (*quoting Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004)). "Where the district court has denied summary judgment on the ground that material issues of fact exist as to the plaintiff's claims, this court lacks jurisdiction to review the court's determination that a genuine fact issue exists." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citing *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)). "Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal." *Id.* (citation omitted). We may not review "the correctness of the plaintiff's version of the facts.'" *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). In other words, we review the materiality, not the genuineness, of the fact disputes found by the district court. *Freeman*, 483 F.3d at 410; *Ramirez v. Martinez*, 716 F.3d 369, 373 (5th Cir. 2013). We review *de novo* the district court's denial of a motion for summary judgment based on qualified immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

## DISCUSSION

The defendants' principal argument on appeal is that the district court erred in its factual determinations. Specifically, Appellants challenge the district court's determinations that Hill offered enough evidence to create a genuine dispute of material fact as to whether (1) the defendants used a suggestive lineup procedure to obtain a false identification of Hill; (2) the defendants failed to disclose evidence relating to the credibility of E.V.'s

identification of Hill when they applied for an arrest warrant; (3) the defendants used a suggestive lineup with G.T. or suppressed evidence that G.T. selected someone other than Hill; (4) Det. Carter suppressed evidence that Hill did not reside at the address listed on the checkbook and that a red Nissan had been observed in the vicinity of that address; and (5) the defendants suppressed the laboratory analysis of the rectal swabs collected from E.V.

As a general matter, as discussed *supra*, we do not have jurisdiction on an interlocutory appeal from a denial of summary judgment to determine "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) ("[T]he district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal."). However, "[w]hen the district court fails to set forth the factual disputes that preclude granting summary judgment, we may be required to review the record in order 'to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Kinney*, 367 F.3d at 348 (quoting *Johnson*, 515 U.S. at 319). We thus lack jurisdiction to review a district court's ultimate determination that genuine fact issues remain, but where the district court fails to make clear what those fact issues are, we may need to review the record ourselves.

Here, the district court articulated five disputed facts, but with the exception of one, which referred specifically to Det. Carter, all of the fact disputes found by the district court were ascribed to the defendants as an undifferentiated group. In conducting a qualified immunity analysis, each defendant officer's conduct must be examined individually. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) ("The district court erred in considering the officers' actions together, and we instruct the court to consider the officers['] actions separately on remand."). An officer cannot be held

individually liable in a § 1983 suit merely because he or she was tangentially involved in a problematic investigation; there must be some evidence tying the officer to misconduct. *See Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689-90 (5th Cir. 2003) (denying qualified immunity to arresting officer who lacked probable cause for arrest but granting qualified immunity to supervising officer, who was also present at the scene but was unaware of the lack of probable cause). The district court did not point to record evidence creating a genuine dispute of material fact involving any individual defendant aside from Det. Carter. For example, the district court cited evidence that forensic tests had been reported directly to Det. Carter and that key pieces of forensic evidence were missing from Hill's original case file. Based on this evidence, the district court concluded that there was a genuine issue of fact as to whether "Det. Carter and/or other defendants" suppressed crucial forensic evidence. The district court did not indicate that there was evidence to link any individual defendant other than Det. Carter to the missing forensic evidence. Indeed, the only defendant the district court's opinion ever tied to bad conduct was Det. Carter.

When a district court denies a motion for summary judgment based on qualified immunity, it will typically "highlight the evidence in the record supporting its conclusions, and it will determine whether the defendant's conduct, as outlined in the factual scenario," violated the plaintiff's clearly established rights. *Castillo v. City of Weslaco*, 369 F.3d 504, 507 (5th Cir. 2004) (per curiam) (citation omitted). The district court adequately set forth the factual disputes that precluded summary judgment for Det. Carter. There is no question that those disputes are material. *See, e.g., Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) ("[A] police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates

clearly established constitutional principles."). The district court did not, however, adequately set out the disputes of fact precluding summary judgment as to the other defendants. When a district court holds without explanation that disputed issues of material fact preclude summary judgment based on qualified immunity, "[w]e can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). A "more efficient alternative" to "combing through the record ourselves and concluding what factual scenario the district court likely assumed" is often to "remand to the district court so that it can outline the factual scenario it assumed in making its decision." *Castillo*, 369 F.3d at 507 (citing *White v. Balderama*, 153 F.3d 237, 242 (5th Cir. 1998) (per curiam)).

The district court in this case did not explicitly examine the evidence as it related to each individual defendant other than Det. Carter. This may have been due to the fact that the defendants in their filings in support of summary judgment, and Hill in his filings in opposition, uniformly presented arguments referencing the defendants as a single, collective group. Although the defendants did assert qualified immunity as to each individual defendant in their original answer to the plaintiffs' complaint, it is unsurprising that the district court limited its analysis to the arguments as presented in the summary judgment filings. The defendants adequately raised qualified immunity, however, so their failure to differentiate between the individual defendants in their district court brief does not justify denying the defense. *See, e.g.*, *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) ("Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it."). Because the district court is well-versed in the record but has not yet explained whether the record prevents summary

No. 15-30062

judgment in favor of any of the individual defendants other than Det. Carter, it will be more efficient to remand this case to the district court than to conduct that analysis ourselves in the first instance. *See Castillo*, 369 F.3d at 507.

## CONCLUSION

The district court set forth the disputed facts that led it to deny Det. Carter summary judgment based on qualified immunity. Because those disputed facts are material, we DISMISS the appeal as to Det. Carter. The district court, however, did not set forth the factual scenario it assumed in denying summary judgment in favor of each of the other defendants. Accordingly, we REMAND to the district court with instructions to consider and determine with reasons whether each of the remaining defendants is entitled to summary judgment based on qualified immunity.