# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2022

Lyle W. Cayce
Clerk

No. 21-30216

JACQUELINE CARTER, *as next of friend on behalf of* WILLIAM H. CARTER,

*Plaintiff—Appellee*,

*versus*

CORPORAL BUTLER; CORPORAL HURST; DEBBIE STRICKLAND; T. TOBIN; T. NESBITT; B. NORSWORTHY; A. LOFTON; J.D. SMITH-PFENDER,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1289

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.

PER CURIAM:*

This case concerns the denial of summary judgment to officers asserting the defense of qualified immunity as to claims arising from William Carter's eight-day incarceration in the Shreveport City Jail. Defendants-

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-30216

Appellants filed this interlocutory appeal. Because our court cannot review the genuineness of factual disputes identified by the district court on an interlocutory appeal of a qualified immunity denial, we dismiss the appeal for lack of jurisdiction.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

William Carter has been paralyzed from the waist down for over a decade as a result of a gunshot wound to his abdomen at age sixteen. He uses a wheelchair for mobility. Carter's lengthy medical history includes severe stage IV pressure ulcers, commonly known as bed sores. Bed sores require daily bandage changing and frequent repositioning to avoid infection. Carter's mother and caretaker, Plaintiff-Appellee Jacqueline Carter, changed his bandages and repositioned him when he lived with her prior to and after his incarceration.[1]

On October 10, 2016, Corporal Julie Smith-Pfender arrested Carter at his home on misdemeanor charges for the unauthorized use of 911. Corporals Louis Butler and Jennifer Hurst transported him in a handicap van to the Shreveport City Jail, where Jailers Alfredo Lofton and Tantunika Tobin carried out his intake classification and Jailers Lofton and Trineice Nesbitt carried out his intake screening. During Carter's incarceration, he was kept in an isolated cell that he claims was insufficiently handicap accessible, and he was never repositioned or aided in changing his bandages.

On October 12, Carter was evaluated on "sick call" by Dr. Tymwa Dixon, who provided gauze and advised continuous bandage changes from

---

[1] According to the amended complaint, "[Carter] is now confined to the University Health Center due to mental issues related to a medical health condition." Jacqueline Carter filed an amended complaint due to confusion about the identity of Corporal Smith-Pfender.

No. 21-30216

wet to dry dressings to prevent his bed sores from worsening. He saw Dr. Dixon again on October 17, and although Dr. Dixon opined that hospitalization was not required, he did conclude that Carter needed more care than the jailers could provide. On October 18, Carter pled guilty to the charged 911 violation, and Jailer Barbara Norsworthy released him from custody.

Shortly after his release on October 21, Carter visited with his primary physician, though he did not direct the physician to examine his bed sores or explain that he had just been in jail. Carter was ultimately hospitalized on November 2 for the infection of his bed sores, and he subsequently spent about six weeks in the hospital.[2]

Jacqueline Carter filed this suit for monetary damages and declaratory relief on behalf of her son under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"),[3] and Louisiana state law. She claimed that the City of Shreveport and named officers failed to provide medical care in violation of Carter's constitutional rights, discriminated against him on account of his disability, and were negligent. The named officers included the arresting officers (Corporals Butler, Hurst, and Smith-Pfender) and the jail officers (Jailers Lofton, Nesbitt, Norsworthy, and Tobin). They also included Lieutenant Joseph Dews and Captain Debbie Strickland for having "failed to

---

[2] The officers point out that after being discharged on November 9, 2016, Carter was re-admitted on January 6, 2017, pursuant to a court order "with the chief complaint of [p]sychiatric [e]valuation" and treated for an array of conditions including bed sores until February 24, 2017. Jacqueline Carter and the district court state that he remained in the hospital for about six weeks.

[3] Jacqueline Carter technically brought this claim under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") and the Rehabilitation Act of 1973. However, the district court referred to it as an ADA claim, as did the parties in their briefs.

properly supervise or provide[] adequate oversight so that [Carter] received proper care."

The City and named officers moved for summary judgment, and the named officers asserted the defense of qualified immunity. The district court granted in part and denied in part the motion on the grounds that disputes of material fact existed as to each claim except those against the City and Lieutenant Dews. With respect to the City, it held that there was no genuine dispute of material fact as to whether the officers' inaction flowed from a Shreveport policy or custom. With respect to Lieutenant Dews, it observed that he was not transferred to his supervisory position at the jail until nearly a year after the relevant events had transpired, and that Jacqueline Carter did not contest the dismissal of the claims against him.

For the remaining officers (Defendants-Appellants, hereinafter "the officers"), the district court held that they were not entitled to qualified immunity because genuine factual disputes precluded a finding that they did not violate Carter's clearly established rights. More specifically, it concluded that a genuine dispute of material fact remained as to (1) whether they acted with deliberate indifference toward Carter's serious medical needs in violation of his constitutional rights, and (2) whether their actions were objectively reasonable in light of clearly established law. The officers filed this interlocutory appeal challenging the denial of qualified immunity.[4]

## II. STANDARD OF REVIEW

In general, an order denying summary judgment is not appealable. *Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855, 856–57 (5th Cir. 1997) (per curiam). "The denial of a summary judgment motion is not a final order, it

---

[4] The officers also filed a motion for reconsideration, which the district court denied.

determines only that the movant is not entitled to judgment as a matter of law and that there are triable issues of fact to be resolved." *In re Corrugated Container Antitrust Litig.*, 694 F.2d 1041, 1042 (5th Cir. 1983) (per curiam). However, according to the collateral order doctrine, an order denying summary judgment on the basis of qualified immunity is immediately appealable when based on a conclusion of law. *Naylor*, 123 F.3d at 857. This is because qualified immunity is "*an immunity from suit* rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

We review a motion for summary judgment de novo, applying the same standard as the district court. *Mack v. City of Abilene*, 461 F.3d 547, 555 (5th Cir. 2006) (per curiam). A variation on this review applies when a defendant appeals a denial of qualified immunity at the summary judgment stage. *See Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998). "In deciding an interlocutory appeal of a denial of qualified immunity, we can review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000) (emphasis in original). Thus, this court has jurisdiction only "to the extent that the denial of summary judgment turns on an issue of law." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (alteration omitted). "Stated another way, we have jurisdiction over law-based denials of qualified immunity, but do not have jurisdiction over a genuine-issue-of-fact-based denial of qualified immunity." *Naylor*, 123 F.3d at 857.

## III. DISCUSSION

Qualified immunity insulates officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To evaluate whether a defendant is entitled to qualified immunity, we ask whether "the officer's conduct violated a constitutional right, and whether the right at issue was clearly established at the time of the alleged misconduct." *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013) (per curiam).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. amend. VIII. The Supreme Court has held that a prison officer's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). And this court has previously recognized that a paraplegic who is not properly cared for in jail is at substantial risk of developing "serious, even life-threatening" bed sores in evaluating a deliberate indifference claim. *See Lawson v. Dallas Cty.*, 286 F.3d 257, 262 (5th Cir. 2002).[5] To show deliberate indifference, a plaintiff must demonstrate that an officer was subjectively aware of the risk but effectively disregarded it. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000) (citing *Farmer*, 511 U.S. at 846–48).

On appeal, the officers argue that the district court erred in denying summary judgment on qualified immunity grounds because (1) Carter did not

---

[5] In *Lawson*, this court held that evidence supported the district court's determination that jail officials violated the inmate's right to adequate medical care under the Eighth Amendment. We thus cannot credit the officers' argument that "there is no 'existing precedent . . . plac[ing] the . . . constitutional question beyond debate.'" *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

face a substantial and significant risk of harm,[6] and (2) when the actions of each individual officer are examined independently, there is no evidence that any of them was subjectively aware of the alleged risk and thereby acted with deliberate indifference. They requested oral argument to "aid this [h]onorable [c]ourt in clarifying the genuineness of any alleged factual disputes based on the record," and ask us to review "[w]hether the [d]istrict [c]ourt erroneously determined there was a genuine issue of fact as to whether any individual defendant acted with deliberate indifference and failed to grant qualified immunity."[7]

At this juncture, we cannot. In deciding an interlocutory appeal of a denial of qualified immunity, our court is unable to review the genuineness of a factual dispute identified by the district court. Here the legal arguments are "inextricably intertwined with [] challenges to the facts that the district court found to be disputed, over which we lack jurisdiction." *Oliver v. Arnold*,

---

[6] Specifically, with respect to risk of harm, the officers argue that (1) Carter's presence at home during his arrest coupled with Dr. Dixon's testimony on his incarceration suggests that at no time did failure to transport him to a hospital create a substantial and significant risk to his health; (2) his wheelchair and bed sores alone did not create a substantial and significant risk, as testimony from Dr. Dixon and a jailer indicates that Shreveport City Jail has had other wheelchair-bound inmates who have cared for themselves; and (3) Carter's lengthy history of non-compliance with his health treatment regimen at home demonstrates that he "was likely at *less* risk of infection while incarcerated."

[7] The officers further argue that the district court erred in (1) relying on the testimony of Jacqueline Carter in determining that a genuine dispute of material fact existed as to causation, and (2) denying summary judgment as to Jacqueline Carter's ADA claim, specifically in suggesting that the failure to attend to the medical needs of disabled prisoners constitutes an ADA violation and that there was intentional discrimination. However, neither argument is within the scope of this interlocutory appeal on qualified immunity, so they will not be discussed further. "We have held that when an appellant chooses to appeal specific determinations of the district court—rather than simply appealing from an entire judgment—only the specified issues may be raised on appeal." *Williams v. Henagan*, 595 F.3d 610, 616 (5th Cir. 2010).

3 F.4th 152, 162 (5th Cir. 2021). The officers urge us to hold that "there is no evidence that Carter needed to be hospitalized . . . [and] failure to transport Carter to a hospital create[d] a substantial and significant risk to his health," and that "there is no evidence that any defendant acted with deliberate indifference and they are entitled to qualified immunity." But the law is clear that on an interlocutory appeal of a qualified immunity denial we are not allowed to challenge the district court's assessments regarding the sufficiency of the evidence. *Kinney*, 367 F.3d at 347 (citing *Johnson v. Jones*, 515 U.S. 304, 313, 319–20 (1995)). The arguments as to the individual officers take a similar tack, each ending with a statement on a perceived dearth of evidence to demonstrate subjective awareness that a failure to take Carter to the hospital presented a substantial and significant risk to his health. Again, the officers are asking us to revisit the sufficiency of the evidence, which is impermissible.

The officers also assert that the district court inappropriately grouped them as "arresting officers" and "jail officers" when the conduct of defendants sued in their individual capacities must be examined separately. *See Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007); *Jacobs*, 228 F.3d at 395; *Hill v. New Orleans City*, 643 F. App'x 332, 337–39 (5th Cir. 2016) (per curiam). The district court rejected this characterization of its analysis in denying their motion for reconsideration, explaining in pertinent part:

> [W]ithin each grouping, each Defendant was in fact individually analyzed under § 1983. The Court noted each officer's specific interactions with Carter ranging from initial officer on-scene for Carter's arrest to intake screening at the Shreveport City Jail to his release from custody. The Court analyzed these interactions for possible deliberate indifference under the proper summary judgment standard, relying upon deposition testimony from the officers themselves when available. This approach stands in stark contrast to the case law

No. 21-30216

cited by Defendants, where the district courts in *Meadours*, *Jacobs*, and *Hill v. New Orleans City* all analyzed officers' actions collectively, failing to explicitly address the officers independently. While the Court opted against giving each Defendant his or her own separate subheading for analysis in its Memorandum Ruling, each individual was indeed evaluated separately.

We agree. Although the district court categorized the officers consistent with the manner in which Jacqueline Carter's Section 1983 claims were pled, the record reflects that it was cognizant of and fully compliant with the bedrock legal requirements of individual actor analysis for qualified immunity purposes.

## IV. CONCLUSION

For the aforementioned reasons, the interlocutory appeal is DISMISSED.