United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 25, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

No. 05-50657
Summary Calendar

———————

BRADLEY R. HAM,

Plaintiff-Appellant,

versus

JAMES BRICE, individually and as a Sheriff of Real County;
BRUCE T. WELDON, individually and as a Deputy Sheriff of
Real County; WARDEN HOHMAN, individually and as a Supervisor
in law enforcement; REAL COUNTY, a political subdivision of
the State of Texas,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:01-CV-837
--------------------

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Bradley R. Ham appeals the district court's order granting summary judgment in favor of

Sheriff James Brice and Deputy Sheriff Weldon Tucker in this 42 U.S.C. § 1983 action. Ham also

argues that his trial counsel was ineffective. For the reasons that follow, we affirm in part and vacate

and remand in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

In January 1999, Ham and Kevin Bartels fled from South Dakota to Texas in order to evade prosecution for producing marijuana. In Real County, Texas, they again began to produce marijuana. Brice received information from a confidential informant about Ham and Bartel's activities and initiated an investigation. Tucker and other officers conducted surveillance of the house where Ham and Bartels were staying.

On September 23, 1999, Tucker and the officers entered the house. Inside they found Bartels. Bartels agreed to assist with the arrest of Ham and Reuben Balderas, a drug trafficker with whom Ham had been working. Bartels advised Tucker that Ham had possibly hidden a backpack on the property with extra clothes and a weapon to facilitate escape if necessary. Later that evening, some of the officers departed for other duties, leaving Tucker and one other officer at the house. Tucker remained inside the house, and the other officer waited outside, available by radio communication.

The next morning, Balderas dropped Ham off at the house. Although the subsequent events are contested, at some time after Ham's arrival, Tucker apprehended Ham. Tucker searched Ham for weapons, did not find any, and subdued him. Tucker did not have any handcuffs and contacted the other officer to bring a pair of handcuffs inside. When the other officer arrived, Ham broke free from Tucker. Ham then fled the house towards a wooded area. Tucker chased Ham as he fled and shot Ham in the calf. Ham was transported to a hospital and eventually had to have his leg amputated below the knee. Tucker later reported that he shot Ham out of concern that Ham was running towards the officers' vehicles, parked in the wooded area and inside of which were loaded weapons.

Ham brought suit against defendants Brice, individually and in his official capacity as Sheriff of Real County, Texas; Tucker, individually and in his official capacity as Deputy Sheriff; and Real

County, a political subdivision of the state of Texas.[1]  The district court granted summary judgment to the defendants.  Acting *pro se*, Ham appeals on three grounds:  (1) summary judgment was improper against Brice in his individual capacity; (2) summary judgment was improper against Tucker in his individual capacity; (3) Ham's trial counsel was ineffective.

## II. STANDARD OF REVIEW

In an appeal from summary judgment, this court reviews the record de novo.  *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).  Summary judgment is proper when, viewing the evidence is the light most favorable to the nonmovant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–22 (1986).  The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## III. DISCUSSION

### A. § 1983 Claim Against Brice

A supervisory official cannot be held individually liable under § 1983 for the actions of subordinates on any theory of vicarious liability; only the official's direct acts or omissions will give rise to individual liability.  *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999).  A supervisory official may be held liable for the wrongful acts of a subordinate when the supervisor

---

[1]Ham also brought suit against the second officer conducting surveillance on the house, but he later dropped the claim.

himself breached a duty imposed by state or local law and this breach caused plaintiff's constitutional injury. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). To hold a supervisory official liable under this theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link existed between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounted to deliberate indifference." *Id.* at 911–12.

Brice adopted the policy set forth in TEXAS PENAL CODE § 9.51 which provides generally when the use of force and deadly force by an officer is and is not justified. Ham argues that Brice's reliance on this statute was inadequate training of Brice's subordinates. However, Ham has not shown how the adoption of this policy was inadequate or how the policy or alleged lack of training actually caused his injury. *See Brenoettsy*, 158 F.3d at 911. Because Ham has failed to make the requisite showing, and because he has not shown through specific citations to record evidence that there is a genuine issue of material fact precluding summary judgment, Ham has not demonstrated that the district court erred in granting summary judgment in favor of Brice. *See Little*, 37 F.3d at 1075.

**B. § 1983 Claim Against Tucker**

Qualified immunity shields police officers from suit "unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Claims of qualified immunity require a two-step analysis: (1) "whether the alleged facts taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right"; and (2) if so, "whether the right was clearly established—that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (internal quotation omitted). When a defendant

asserts qualified immunity, it is the plaintiff's burden to show that the defendant is not entitled to invoke the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

Claims that police officers used excessive force during arrest are analyzed under the Fourth Amendment. *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). The plaintiff must show (1) an injury (2) that resulted directly and solely from the use of force that was clearly excessive to the need, and (3) the excessiveness must have been objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996). In gauging objective unreasonableness, this court balances the nature and intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998). In *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), the Supreme Court explained that where the suspect poses no immediate threat to the officer or to others, the harm resulting from the failure to apprehend him does not justify the use of deadly force. The Court also explained that, where the officer has probable cause to believe that the suspect does pose a threat of serious bodily injury to the officer or to others, then it is not constitutionally unreasonable to prevent escape with deadly force. *Id*.

Initially, the district court denied Tucker's motion for summary judgment. In its order, the district court examined the disputed facts and concluded that, under the first step of the two-step analysis, there were genuine issues of material fact as to whether the force employed by Tucker to stop Ham was objectively unreasonable. The district court also concluded that Tucker was not entitled to qualified immunity under the second step because no reasonable officer would have felt justified in using deadly force to incapacitate Ham under the circumstances. In particular, the district noted that no one was in immediate danger and that Ham was not attempting to enter the officers' vehicles. Subsequently, Tucker filed a Rule 60(b) motion, calling the district court's attention to *Brosseau v. Haugen*, 543 U.S. 194 (2004). Relying on *Brosseau*, the district court then granted

Tucker's motion for summary judgment, determining that Tucker was entitled to qualified immunity.

In *Brosseau*, the § 1983 plaintiff attempted to evade arrest. He climbed into his car, and the officer pointed her gun at the plaintiff, commanding him to exit the vehicle. *Id*. at 196. Ignoring the officer's orders, the plaintiff drove off. *Id*. The officer shot through the rear window and hit the plaintiff in the back. *Id*. at 197. The officer later explained that she was fearful for the other officers and occupants of vehicles known to be in the immediate area. *Id*. The Supreme Court focused on whether the constitutional right that the officer allegedly violated was "clearly established" in a "particularized" sense. *Id*. at 198–99. The Court characterized the situation that the officer confronted: "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id*. at 200. The Court then examined three cases involving a suspect fleeing by vehicle and concluded that none of the cases governed the officer's situation. *Id.* at 201–02. Finding that the officer's actions fell in the "hazy border between excessive and acceptable force," the Court held that the officer's conduct did not clearly violate the plaintiff's Fourth Amendment rights. *Id*. at 201.

Ham argues that the district court erred in determining that *Brosseau* is so similar to the instant case that it warranted summary judgment. He argues that the instant case is clearly distinguishable from *Brosseau*, for several reasons: (1) Ham was searched and found to be unarmed; (2) he was fleeing on foot; (3) he was fleeing down a deserted path in a wooded area; (4) at least two armed police officers were present at the scene; (5) he did not physically resist the officer; (6) Tucker immediately began firing and commanding Ham to stop; and (7) investigators could not verify the presence of the unlocked vehicle with accessible loaded firearms before Tucker left the scene of the shooting.

Ham has shown that the district court erred in granting summary judgment in favor of Tucker. *Brosseau* is factually distinguishable from the instant case: it involved vehicular flight, and bystanders were known to be in the immediate vicinity. In the instant case, Ham fled from Tucker on foot, running away from the house into an unpopulated wooded area. Tucker had also frisked Ham and found him unarmed. Although Tucker asserted that Ham was running toward Tucker's vehicle, in which Tucker had left several loaded firearms, investigators did not arrive on the scene until two hours after the shooting and could not verify Tucker's allegations. Before the investigators arrived, Sheriff Brice allowed Tucker to leave the scene in his vehicle.

The Court in *Brosseau* emphasized that the qualified immunity inquiry "must be undertaken in light of the specific context of the case." 543 U.S. at 198. The Court acknowledged that its decision in *Garner* was rendered at a high level of generality and that, though *Garner* may not provide guidance for cases that fall along the hazy border of excessive and acceptable force, it does provide guidance for cases that are clear. *See Brosseau*, 543 U.S. at 199–201. We agree with the district court's assessment in its first order denying summary judgment that the harm resulting from Tucker's shooting of Ham is the type that *Garner* intended to prevent. Because the instant case is factually distinguishable from *Brosseau*, the district court erred in granting summary judgment in favor of Tucker based on *Brosseau*. Accordingly, the district court's judgment is vacated in part as to Ham's Fourth Amendment claim against Tucker in his individual capacity, and the case is remanded to the district court for further proceedings.

## C. Ineffective Assistance of Counsel Claim

Ham argues that his trial counsel was ineffective because his counsel's errors resulted in the district court's order dismissing his claims. Ham's argument is without merit because the

constitutional right to effective assistance of counsel does not apply in a civil action such as a § 1983 claim. *See F.T.C. v. Assail, Inc.*, 410 F.3d 256, 267 (5th Cir.), *cert. denied*, 126 S. Ct. 735 (2005).

## IV.  CONCLUSION

The judgment of the district court is AFFIRMED in part, VACATED in part, and the case is REMANDED for further proceedings.