# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51252

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2017

Lyle W. Cayce
Clerk

JOE ANTHONY GUERRA, Individually, and on behalf of the Estate of Jose Alberto Guerra, Deceased; LINDA CARRANZA, Individually and on behalf of the Estate of Jose Alberto Guerra, Deceased,

      Plaintiffs - Appellees

v.

SERGEANT FRANK BELLINO, Bexar County Sheriff's Office,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-652

ON PETITION FOR REHEARING EN BANC

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

No judge in active service on this court requested the court be polled in response to the petition for rehearing en banc. The petition is denied. The prior opinion is withdrawn, and this opinion is substituted.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51252

Joe Anthony Guerra and Linda Carranza, for themselves and for their son's estate, sued former deputy sheriff Frank Bellino under 42 U.S.C. § 1983. Bellino moved for summary judgment on the basis of qualified immunity, but the district court denied the motion. We REVERSE.

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 1:30 a.m. on October 14, 2012, law enforcement received reports from multiple individuals about a young man, later identified as 19-year-old Jose Anthony Guerra, "causing a traffic disruption along Culebra Road" in Bexar County, Texas. Witnesses reported that Guerra, who stood slightly less than six feet tall and weighed 198 pounds, was stumbling, walking through traffic, and wearing pants but no shirt. Based on his behavior, witnesses assumed Guerra was intoxicated. At the time of the incident, Culebra Road was dimly lit, and there was light traffic.

Sergeant Frank Bellino responded to the reports. As he approached the scene, he noticed the motorists in front of him "applying their brakes and moving over to the center turn lane." He soon spotted Guerra walking toward the east in the westbound lane. Bellino activated his emergency lights "so that traffic would be less likely to strike" Guerra. He then parked his patrol car approximately 25 feet away.

Bellino claims that after he exited his patrol vehicle, Guerra's conduct became menacing. He described Guerra as "sweating and breathing very heavily," "flexing his muscles," and "swinging his arms back and forth aggressively." Like other witnesses, Bellino believed Guerra was intoxicated. Bellino ordered Guerra to stop walking. Bellino claims he only drew his gun and activated his emergency toner when Guerra refused to comply.

The plaintiffs dispute Bellino's narrative about the initial encounter. They claim Guerra would not have been threatening; he was smaller than

2

Bellino, who was taller than six feet and weighed 220 pounds.  Further, they claim that audio evidence proves Bellino never tried to deescalate the situation but instead exited his vehicle and threatened to shoot almost immediately.

Guerra stopped at the front of the patrol car.   Bellino thought Guerra snarled after hearing the officer's threat to shoot.  At that time, Bellino was standing near the rear of the patrol car.  Guerra complied with Bellino's command to place his hands on the hood of the car.  Bellino was unable to determine, though, whether "Guerra was holding anything clenched in his fists or whether he had anything dangerous in the pockets of his pants."  Bellino claims that, while he was on the shoulder of the road, he attempted to talk to Guerra.  The plaintiffs dispute this claim, arguing that Bellino immediately threatened physical force without any attempt to deescalate.

Bellino continued to point his gun at Guerra while waiting for backup.  When Bellino asked his name, Guerra began performing push-ups on the hood of the car and said something like "Call me Union" in what Bellino characterizes as a "demonic voice."  The plaintiffs suggest that he was likely asking Bellino to call his "unit," referring to his military reserve unit.

By that point, Lewis Meline had started filming the encounter on his cell phone from approximately 15–20 yards away.  Meline and other eyewitnesses contest Bellino's account of the altercation.  Meline, for example, claims that Guerra was "pretty far on the car with his fingers spread" and "had his legs spread quite a bit."  A couple that drove past the scene claims that Guerra "had his hands surrendered on the car."  Meline believed that Guerra was either too exhausted or intoxicated to comply with Bellino's commands.  Meline also heard Bellino threaten Guerra by saying, "Don't make me do it," or "You're going to make me do it."

Both parties concede, and the eyewitness video shows, that Guerra moved rapidly in Bellino's direction approximately one minute after Meline

began filming. As Guerra approached him, Bellino claims he ordered Guerra to stop and took a few steps back. Guerra ignored the command and lowered his head while still moving towards Bellino. One eyewitness testified that Guerra may have been running at an angle slightly away from Bellino while "trying to run past him." In any event, Bellino began shooting less than a second after Guerra began moving and stopped shooting less than two seconds later. Bellino fired three shots in total, fatally wounding Guerra. No weapons were found on Guerra or in his vicinity. Photographs show blood from Guerra's wounds directly behind Bellino's patrol car.

An autopsy was performed the next day. It confirmed that Guerra had been shot once in his head, once in the right side of his chest, and once in his left anterior thigh. Two of the bullets entered his body at a steeply downward angle; the bullet that struck Guerra's left thigh traveled at an upward angle. The medical examiner's report found "[n]o evidence of close range firing." The autopsy's toxicology report determined Guerra's blood-alcohol level was .284 at the time of his death.

Joe Anthony Guerra and Linda Carranza sued individually and on behalf of their son's estate, alleging Fourth Amendment violations under Section 1983. Specifically, they claim that Bellino violated Guerra's right to be free from an unreasonable search and seizure and from the use of excessive force. Bellino moved for summary judgment on grounds that no constitutional violation had been alleged and that he was entitled to qualified immunity. The district court denied the motion in part, finding that Bellino was not entitled to qualified immunity. The district court identified three genuine issues of material fact in denying Bellino's motion: (1) whether Guerra attempted to rush Bellino or attempted to flee; (2) whether Guerra was cooperative or posed a threat of serious physical harm to Bellino prior to the shooting; and (3)

No. 15-51252

whether Bellino's statement following the incident was credible. Bellino timely noticed this interlocutory appeal.

## DISCUSSION

Generally, the denial of a motion for summary judgment is not appealable, but a denial "based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). These orders are only immediately appealable, though, "to the extent that the district court's order turns on an issue of law." *Brown v. Strain*, 663 F.3d 245, 248 (5th Cir. 2011).

The plaintiffs argue we have no jurisdiction because the district court's order and Bellino's brief focus exclusively on issues of fact. We are not stripped of jurisdiction simply because the district court determined that genuine issues of fact exist. *See Evett v. DETNTFF*, 330 F.3d 681, 686 (5th Cir. 2003). We may review the district court's determination "that those disputed issues are material to the issue of qualified immunity." *Id.* The materiality of factual disputes is a question of law and is reviewable. *See id.* at 686–87.

We apply *de novo* review to determine whether these factual disputes are material. *Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if its resolution could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We "view the facts and draw reasonable inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Id.* When a videotape of the incident exists, though, we view "the facts in the light depicted by the videotape." *Id.* at 380–81.

5

No. 15-51252

Bellino moved for summary judgment based on qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We thus engage in a two-part qualified-immunity analysis. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). First, we determine whether the defendant's actions violated the plaintiff's statutory or constitutional rights. *Id.* We then determine whether the right claimed was "clearly established," meaning one "of which a reasonable person would have known." *Id.*

Using deadly force to apprehend someone suspected of a criminal offense "is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). To succeed on their excessive-force claim, the plaintiffs must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *See Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). If the officer reasonably believes the suspect poses a threat of serious harm, the use of deadly force is not excessive. *Id.* Accordingly, we judge the officer's conduct based on "the circumstances confronting him, without the benefit of hindsight." *Manis*, 585 F.3d at 843.

Video evidence can be dispositive on a motion for summary judgment; it is in this case. *See Scott*, 550 U.S. at 380–81. We are to rely on clear video evidence when such evidence is available. *Id.* At times, video evidence is not clear enough to contradict the plaintiff's version of events. *See Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013). For example, we do not credit video evidence when it does not display the entire altercation. *Id.* at 374. The video in *Ramirez* also included "about five people," and none of their faces were

No. 15-51252

visible for much of the altercation, making it difficult to tell which individuals performed which acts. *Id.* In another case, we found video evidence inconclusive when it failed to show the plaintiff and the defendant at the same time during the altercation. *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015). The eyewitness video here suffers none of those defects. Meline's video captured the entire altercation; Bellino and Guerra are identifiable, based largely on the parties' stipulations, and both are within the frame during the entirety of the video.

The plaintiffs assert that the video here is not determinative because it does not show Guerra "attacking" Bellino. This assertion misapprehends the qualified-immunity standard. Qualified immunity requires that an objectively reasonable officer in Bellino's position believe Guerra posed a threat of serious harm. *See Flores*, 381 F.3d at 395, 402. We have viewed the video. Though grainy, the video shows that Bellino's detainee suddenly turned and charged toward him in the dark from less than a car's length away. The plaintiffs even concede that the video shows Guerra "moving quickly" toward Bellino. Also, toward the end of the video, Meline states, "The guy just charged the cop, and he shot him." In light of these filmed facts, which are undisputed, the factual issues identified by the district court are immaterial.[1]

The district court identified three factual disputes that it held precluded the entry of summary judgment in Bellino's favor. First, the plaintiffs claim Guerra was attempting to flee the scene, while Bellino stated that Guerra

---

[1] The plaintiffs argue that Bellino waived any argument concerning the materiality of the district court's recognized fact issues. A party that fails to make adequate briefing of an issue on appeal waives it. *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010). Adequate briefing requires that a party "press" an issue, which requires raising the argument and citing relevant legal principles. *Id.* at 446–47. Bellino adequately raised the materiality issue by calling the district court's findings irrelevant and inconsequential. He also cited some of the same cases we rely on in our analysis. His materiality argument was not waived.

charged directly toward him.  The plaintiffs, though, stipulated that Guerra moved rapidly in Bellino's direction, and the video confirms this.  Meline's testimony provides the only basis for the theory that Guerra may have attempted to flee: "[F]rom where I was standing, I couldn't tell if [Guerra ran] directly at [Bellino] or if he was angled a bit and he was trying to run past him. From my angle, . . . I couldn't tell that rate of detail."  Even these statements show that Guerra, if running at an angle, was doing so only slightly and ran very close to the place in which Bellino originally stood.  The eyewitness video shows that Bellino had mere seconds to determine how to respond to this visibly agitated detainee charging almost directly toward him in the dark from less than a car's length away.  Further, Guerra landed immediately behind Bellino's patrol car after being shot, confirming Bellino's assertion that Guerra ran toward him and not away from him.  Bellino was forced to make a split-second decision based on Guerra's conduct without knowledge of his subjective intent.  *See Colston v. Barnhart*, 130 F.3d 96, 100 (5th Cir. 1997).  A reasonable officer in Bellino's position could have concluded that Guerra posed a threat of serious harm.  *See id.*  Whether Guerra was running at an angle, it was too slight to be a material fact.

Second, the plaintiffs claim, and Bellino concedes, that Guerra was cooperative at the beginning of the incident.  Bellino's actions, though, are to be judged at the time of the shooting.  *See Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011).  The eyewitness video shows Guerra charging toward Bellino immediately before the shooting.  We may determine in hindsight that Guerra posed no threat, but such a determination is of no consequence to the analysis.  *See Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991).  Guerra's cooperation prior to the point at which he charged Bellino is immaterial.

Third, the district court noted that Bellino consulted with an attorney before giving a statement, so it concluded "credibility determinations must be

made as to whether some facts were omitted from his statement and whether other items were added to justify the shooting." We disagree. Bellino's credibility is immaterial because the video offers irrefutable proof that he was justified in believing Guerra presented a threat at the time of the shooting. A determination about Bellino's credibility does not alter the video evidence: Guerra ran toward Bellino from a car's length away, and a reasonable officer could have perceived a threat of serious harm. Bellino's actions were reasonable under the circumstances, so no constitutional violation occurred.

Even had a constitutional violation occurred, the plaintiffs carry the burden of demonstrating Bellino violated clearly established law. *See King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). Generalized legal principles do not satisfy this second element of the qualified-immunity analysis, which "must be undertaken in light of the specific context of the case[.]" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The need for factually similar precedent is "especially important in the Fourth Amendment context" because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* Depending on the facts of the case, an officer may be entitled to qualified immunity even when unable to determine whether a suspect "intended to flee or inflict further injury or death on the officers." *Colston*, 130 F.3d at 100.

The plaintiffs seek to identify a violation of clearly established law on the basis of the proposition that "shooting an unarmed suspect who did not pose a threat of serious physical harm is a violation of that suspect's rights." In considering the availability of qualified immunity in an excessive-force case, the Supreme Court has rejected almost that exact articulation. *Mullenix*, 136 S. Ct. at 308–09. Such a standard is inconsistent with a standard of objective reasonableness, which does not ask what was in Guerra's mind but what could have been in the mind of an objectively reasonable officer.

No. 15-51252

> Our perspective on review is that of "a reasonable officer on the scene," and we "allow[ ] for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."

*Flores*, 381 F.3d at 399 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Further, the proposed standard is insufficiently specific to satisfy the second part of qualified-immunity analysis, as "clearly established law" must not be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Similarly, we consider the same defect to exist in the dissent's use of *Ham v. Brice*, 203 F. App'x 631 (5th Cir. 2006). The dissent's analogy is based in large part on the fact that the suspect in *Ham* was fleeing. However, the film conclusively shows that Guerra ran towards Bellino. Liability for the officer does not turn on where Guerra might have planned to run after reaching Bellino. It turns on objective reasonableness based on what the officer saw.

REVERSED.

No. 15-51252

JAMES E. GRAVES Jr., Circuit Judge, dissenting:

I.

The majority disregards two well-established principles in the doctrine of qualified immunity. First, when reviewing a denial of a motion for summary judgment based on qualified immunity, our jurisdiction is limited; it extends only to "the materiality of any factual disputes, but not their genuineness." *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016). Second, "we must view the facts in the light most favorable to the plaintiff." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 621 (5th Cir. 2006). Overreaching our jurisdictional mandate, the majority resolves factual disputes to hold that Sergeant Bellino's fatal shooting of Guerra was objectively reasonable. To do so, the majority concludes that "Bellino's credibility is immaterial" because of "irrefutable proof" in the form of a dark, grainy eyewitness video.[1] I respectfully dissent.

The majority concludes that, because the eyewitness video shows one indistinct figure (Guerra) "move rapidly in [the] direction" of another indistinct figure (Bellino), a reasonable officer, with "mere seconds to determine how to respond to this visibly agitated detainee," would have been justified in using deadly force. The eyewitness video is only dispositive if it "utterly discredit[s]" Guerra's "version of events" so that "no reasonable jury could have believed him." *See Scott v. Harris*, 550 U.S. 372, 380 (2007). It does not. At most, the video is inconclusive regarding whether Guerra was rushing at Bellino or instead was fleeing from him, albeit at an angle, and posed no reasonable threat. *Id.* The district court correctly deemed the video inconclusive. Its

---

[1] The eyewitness video may be accessed via the following internet link: http://www.ca5.uscourts.gov/opinions/pub/15/15-51252.mp4. An enhanced version of the video may also be accessed via the following internet link: http://www.ca5.uscourts.gov/opinions/pub/15/15-51252_enhanced.mp4.

11

finding is consistent with eyewitness testimony by Meline, who filmed the encounter and who stated: "[F]rom where I was standing, I couldn't tell if [Guerra ran] directly at [Bellino] or if he was angled a bit and he was trying to run past him."

But relying solely on the grainy video, the majority posits that any factual issues identified by the district court are entirely immaterial, including whether Guerra's flight path was at an angle from Bellino. This conclusion contradicts Supreme Court precedent. As the Court explained, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Here, the nonmoving parties have proffered evidence that Guerra was unarmed, nonthreatening, and was shot dead while attempting to flee the scene. The medical examiner's report, which found "[n]o evidence of close range firing," supports their version of the facts. The video evidence here does not utterly discredit the nonmovants' version of the facts. *See Scott*, 550 U.S. U.S. at 380. On these disputed issues of material fact, we lack jurisdiction to review.

## II.

I would also hold that Bellino's alleged use of excessive force violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). In *Garner*, the Supreme Court held that "it was unreasonable to kill a 'young, slight, and unarmed' burglary suspect, by shooting him 'in the back of the head' while he was running away on foot, and when the officer 'could not reasonably have believed that [the suspect] . . . posed any threat,' and 'never attempted to justify his actions on any basis other than the need to

prevent an escape.'" *See Scott*, 550 U.S. at 383-84 (quoting *Garner*, 471 U.S. at 21, 4). Properly crediting Guerra's version of events, it is thus clearly established that Bellino's use of lethal force against an unarmed, nonthreatening and fleeing suspect was unreasonable. *Id.*

On similar facts, we have previously so held. In *Ham v. Brice*, 203 F. App'x 631, 635 (5th Cir. 2006), we specifically found that *Garner* precluded granting summary judgment to an officer on qualified immunity grounds regarding the shooting of an unarmed suspect who was attempting to flee towards a wooded area. In that case, the officer also attempted to justify his actions, contending that he shot Ham out of "concern that Ham was running towards the officers' vehicles, parked in the wooded area and inside of which were loaded weapons." *Id.* Nevertheless, we reasoned that "the harm resulting from Tucker's shooting of Ham [was] the type that *Garner* intended to prevent" based largely on the facts that (1) Ham was unarmed; (2) he was fleeing on foot; (3) he was fleeing down a deserted path; (4) he did not physically resist the officer; and (5) the officer immediately began firing. *Id.* We also noted that investigators could not verify key elements of the officer's story. *Id.*

As in *Ham*, the harm resulting from Bellino's force is "the type that *Garner* intended to prevent." *Id.* Similar to *Ham*, (1) Bellino shot Guerra even though he was unarmed; (2) Guerra was fleeing on foot; (3) Guerra was fleeing through a sparsely populated area; (4) Guerra did not physically resist Bellino; and (5) Bellino immediately began firing. And just as in *Ham*, the court below questioned the veracity of statements made by Bellino. Accordingly, I would hold that Bellino's alleged use of excessive force violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Flores*, 381 F.3d at 395.