JAMES E. GRAVES Jr., Circuit Judge,
dissenting:
I.
The majority disregards two well-established principles in the doctrine of qualified immunity. - First, when reviewing a denial of a motion for summary judgment *319 based on qualified immunity, our jurisdiction is limited; it extends only to “the materiality of any factual disputes, but not their genuineness.” Brothers v. Zoss, 837 F.3d 513, 517 (5th Cir. 2016). Second, “we must view the facts in the light most favorable to the plaintiff.” Martinez-Aguero v. Gonzalez, 459 F.3d 618, 621 (5th Cir. 2006). Overreaching our jurisdictional mandate, the majority resolves factual disputes to hold that Sergeant Bellino’s fatal shooting of Guerra was objectively reasonable. To do so, the majority concludes that “Belli-no’s credibility is immaterial” because of “irrefutable proof’ in the form of a dark, grainy eyewitness video.[1] I respectfully dissent.
The majority concludes that, because the eyewitness video shows one indistinct figure (Guerra) “move rapidly in [the] direction” of another indistinct figure (Belli-no), a reasonable officer, with “mere seconds to determine how to respond to this visibly agitated detainee,” would have been justified in using deadly force. The eyewitness video is only dispositive if it “utterly discredits]” Guerra’s “version of events” so that “no reasonable jury could have believed him.” See Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). It does not. At most, the video is inconclusive regarding whether Guerra was rushing at Bellino or instead was fleeing from him, albeit at an angle, and posed no reasonable threat. Id. The district court correctly deemed the video inconclusive. Its finding is consistent with eyewitness testimony by Meline, who filmed the encounter and who stated: “[F]rom where I was standing, I couldn’t tell if [Guerra ran] directly at [Bellino] or if he was angled a bit and he was trying to run past him.”
But relying solely on the grainy video, the majority posits that any factual issues identified by the district court are entirely immaterial, including whether Guerra’s flight path was at an angle from Bellino. This conclusion contradicts Supreme Court precedent. As the Court explained, “[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.” Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Here, the nonmoving parties have proffered evidence that Guerra was unarmed, nonthreatening, and was shot dead while attempting to flee the scene. The medical examiner’s report, which found “[n]o evidence of close range firing,” supports their version of the facts. The video evidence here does not utterly discredit the nonmovants’ version of the facts. See Scott, 550 U.S. at 380, 127 S.Ct. 1769. On these disputed issues of material fact, we lack jurisdiction to review.
II.
I would also hold that Bellino’s alleged use of excessive force violates “clearly established statutory or constitutional rights of which a reasonable person would have known.” See Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004). In Gamer, the Supreme Court held -that “it was unreasonable to kill a ‘young, slight, and unarmed’ burglary suspect, by shooting him ‘in the back of the head’ while he was running away on foot, and when the officer ‘could not reasonably have believed that [the suspect] ... posed any threat,’ and ‘never attempted to justify his actions on any basis other than the need to prevent *320 an escape.’ ” See Scott, 550 U.S. at 383-84, 127 S.Ct. 1769 (quoting Garner, 471 U.S. at 21, 4, 105 S.Ct. 1694). Properly crediting Guerra’s version of events, it is thus clearly established that Bellino’s use of lethal force against an unarmed, nonthreatening and fleeing suspect was unreasonable. Id,
On similar facts, we have previously so held. In Ham v. Brice, 203 Fed.Appx. 631, 635 (5th Cir. 2006), we specifically found that Gamer precluded granting summary judgment to an officer on qualified immunity grounds regarding the shooting of an unarmed suspect who was attempting to flee towards a wooded area. In that case, the officer also attempted to justify his actions, contending that he shot Ham out of “concern that Ham was running towards the officers’ vehicles, parked in the wooded area and inside of which were loaded weapons.” Id. Nevertheless, we reasoned that “the harm resulting from Tucker’s shooting of Ham [was] the type that Garner intended to prevent” based largely on the facts that (1) Ham was unarmed; (2) he was fleeing on foot; (3) he was fleeing down a deserted path; (4) he did not physically resist the officer; and (5) the officer immediately began firing. Id. We also noted that investigators could not verify key elements of the officer’s story. Id,
As in Ham, the harm resulting from Bellino’s force is “the type that Gamer intended to prevent.” Id. Similar to Ham, (1) Bellino shot Guerra even though he was unarmed; (2). Guerra was fleeing on foot; (3) Guerra was fleeing through a sparsely populated area; (4) Guerra did not physically resist Bellino; and (5) Belli-no immediately began firing. And just as in Ham, the court below questioned the veracity of statements made by Bellino. Accordingly, I would hold that Bellino’s alleged use of excessive force violates “clearly established statutory or constitutional rights of which a reasonable person would have known.” See Flores, 381 F.3d at 395.

. The eyewitness video may be accessed via the following internet link: http://www.ca5, uscourts.gov/opinions/pub/15/15-51252.mp4. An enhanced version of the video may also be accessed via the following internet link: http:// www.ca5■uscourts.gov/opinions/pub/15/15-51252-.enhanced.mp4.